# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN SCOTT CAMPBELL,

        Defendant-Appellant.

UNPUBLISHED
July 21, 2015

No. 321382
Kent Circuit Court
LC No. 13-011491-FH

Before: SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant, John Scott Campbell, appeals by leave granted[1] his plea-based conviction for operating a motor vehicle while intoxicated, third offense, MCL 257.625(1), (9)(c). The trial court sentenced him as a second-offense habitual offender, MCL 769.10, to 60 to 90 months' imprisonment, which represented an upward departure from the recommended minimum sentence range of 12 to 30 months' imprisonment. For the reasons set forth below, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Following a traffic incident, defendant was originally charged with operating a motor vehicle while intoxicated, third offense, MCL 257.625(1), (9)(c), and driving with a suspended license, second or subsequent offense, MCL 257.904(1), (3)(b). He was also charged with a civil infraction for refusing to take a breathalyzer test. He was charged as a fourth-offense habitual offender, MCL 769.12. The prosecution offered, and defendant accepted, a plea deal pursuant to which the prosecution would dismiss the charges of driving on a suspended license and refusing a breathalyzer test, as well as the fourth-offense habitual offender notice, in exchange for defendant agreeing to plead guilty to operating a motor vehicle while intoxicated, third offense,

---

[1] *People v Campbell*, unpublished order of the Court of Appeals, entered June 11, 2014 (Docket No. 321382).

with a second-offense habitual offender enhancement. At defendant's plea hearing, the trial court[2] attempted to explain the potential punishments defendant would be facing:

> If you plead or are found guilty, the drunk driving, the third charge with a second supp [sic], originally they—third charge—and I'm going to read you the maximum penalty for that and then tell you what the second supp [sic] does to it—carries—if you plead guilty to the third drunk driving within ten years, it carries a minimum of $500 fines, maximum of $5,000 and either a minimum one year in the county jail or up to five years in the state prison or probation with 30 days to one year in jail, at least 48 hours to be served consecutively—which means one after the other—and 60 to 100 days—180 days of community service.

> Also, they can sentence you to rehabilitative programs, the cost of prosecution to reimburse the government for emergency response and the expenses for prosecuting you. Also, your vehicle that you were driving can be ordered—or, mandatorily would be ordered immobilized if you plead to a third offense drunk driving. And all of them would have to be within a ten-year period.

> Now, if you—with the second supp [sic] the penalty—and this is going to be interesting—normally a second supp [sic] would—a third supp [sic] would double it. A second supp [sic] would—you know, I'm going to probably have to calculate some of these fines.[3]

> * * *

> Yeah. So a quarter—if you plead guilty with a second supp [sic], the minimum fine would be $625; the maximum would be $6,250. And either a minimum of 12—a minimum of 15 months in the county—or, in the state prison to a maximum of six—let's see, five years, six years—better do it in months.

> A maximum of—that's 60 months—of 75 months. So it's a minimum of 12 months, plus a quarter of 12 would be 3—a minimum of 15 months in the state prison to a maximum of 75 months in the state prison or probation with a minimum—one, two—with a minimum of, like, 37 and a half days to a maximum of 456 days and a quarter, I think, at least 48 hours, and again, that—we add another quarter of that, so that would be at least 60 hours to be served consecutively, one after the other, or—and, I'm sorry, a minimum of 75 days to a maximum of 225 days of community services, plus the cost of prosecution,

---

[2] The plea hearing was handled by the district court and sentencing was handled by the circuit court.

[3] At this point, defendant's attorney briefly interjected and offered his understanding that defendant's maximum sentence would be 7-1/2 years' imprisonment.

reimbursing the government for any emergency response and expenses. And if you—the car would be mandatorily immobilized if you plead guilty.

When the trial court finished calculating defendant's potential punishments, it asked defendant if he had "any idea" of what had just been said. Defendant responded "yes." The trial court then summarized: "[b]asically, what we've done would—is to take the second supp [sic] and that adds about 25 percent of everything to what the original—the original max [sic] was that I gave you. And I think I've come fairly close." The trial court then asked defendant again if he understood these potential punishments, to which defendant again responded "yes" and reiterated his desire to accept the plea offer. After ensuring that defendant was aware of the rights he would be waiving if he pleaded guilty and that it was defendant's free and knowing choice to enter the guilty plea, the trial court accepted defendant's plea.

As discussed in more detail below, the trial court erred when it informed defendant of the maximum term he faced. Rather than facing a maximum term of 75 months, defendant, with the second-offense habitual offender enhancement, faced a maximum term of 90 months' imprisonment.

The trial court sentenced defendant on January 16, 2014. The court acknowledged that defendant's recommended minimum guidelines range called for a minimum sentence between 12 and 30 months' imprisonment, but concluded that there were substantial and compelling reasons to sentence defendant above the recommended guidelines range. The trial court sentenced defendant to a minimum term of 5 years (60 months) and a maximum term of 7-1/2 years (90 months). The trial court's stated reasons for departure are discussed in more detail below.

## II. DEFENDANT'S GUILTY PLEA

### A. PLEA PROCEEDINGS

Defendant argues that his plea was not knowing and voluntary because the trial court failed to accurately inform him of the maximum possible sentence. "Guilty-and no-contest proceedings are governed by MCR 6.302." *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). Pertinent to this case, "[t]he first sentence of [MCR 6.302(A)] provides that a 'court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate.' " *Id.* at 330-331. In order for his or her plea to be voluntary, the defendant "must be 'fully aware of the direct consequences' of the plea." *Id.* at 333, quoting *Brady v United States*, 397 US 742, 755; 90 S Ct 160; 25 L Ed 2d 747 (1970) (citation omitted). The penalty to be imposed has been termed "[t]he most obvious 'direct consequence' of a conviction . . . ." *Id.* at 334 (citation and quotation marks omitted). Along these lines, MCR 6.302(B)(2) requires that the trial court inform the defendant of "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law . . . ." The duty to inform the defendant of the maximum possible prison sentence includes informing the defendant "of his or her maximum possible prison sentence as an habitual offender before accepting a guilty plea." *People v Brown*, 492 Mich 684, 687; 822 NW2d 208 (2012). This is because the enhanced maximum under the habitual offender statutes "becomes the 'maximum possible prison sentence' for the principal offense." *Id.* at 694. "By not telling a defendant the potential maximum sentence because of his or her habitual-offender status, a trial

-3-

court is not advising of the true potential maximum sentence." *Id.* at 694 (citation and quotation marks omitted). The Court in *Brown* described the failure to inform a defendant of his maximum possible sentence after enhancement under the habitual offender statutes as "a clear defect in the plea proceedings" that meant that the defendant "was not accurately informed of the consequences of his plea . . . ." *Id.* This "clear defect" rendered the defendant unable "to make an understanding plea under MCR 6.302(B)." *Id.* "[A]n involuntary plea violates the state and federal Due Process Clauses." *Id.* at 699, citing US Const, Ams V and XIV; Const 1963, art 1, § 17.

In *Brown*, our Supreme Court considered the appropriate remedy in a case where a defendant was not advised of the maximum possible prison sentence before entering a guilty plea. *Id.* at 695. The Court concluded that, consistent with MCR 6.310(C) (discussed in more detail below), the defendant in such a situation should be permitted to choose whether to allow the plea and sentence to stand or to withdraw the plea. *Id.*

## B. DEFENDANT WAS NOT INFORMED OF HIS MAXIMUM POSSIBLE SENTENCE

Defendant in the instant case was charged with operating a motor vehicle while intoxicated, third offense, which, under ordinary circumstances, carries a maximum possible prison sentence of five years (60 months). MCL 257.625(9)(c)(*i*). Defendant was charged as a second-offense habitual offender pursuant to MCL 769.10, which provides in pertinent part:

> (1) If a person has been convicted of a felony or an attempt to commit a felony, whether the conviction occurred in this state or would have been for a felony or attempt to commit a felony in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

> (a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, the court, except as otherwise provided in this section or section 1 of chapter XI, may place the person on probation or sentence the person to imprisonment for a maximum term that is not more than 1- ½ times the longest term prescribed for a first conviction of that offense or for a lesser term.

In *People v Bewersdorf*, 438 Mich 55, 68-71; 475 NW2d 231 (1991), our Supreme Court held that the sentencing enhancement scheme under MCL 257.625 does not conflict with the habitual offender statute, and therefore, if a person with a prior felony conviction is subsequently convicted of felony drunk driving, that person's sentence is not limited to the five-year maximum penalty set forth in the drunk driving statute, but rather may be enhanced in accordance with the habitual offender statute. Thus, as a second-offense habitual offender, defendant's maximum sentence of five years' imprisonment for felony drunk driving could be enhanced up to 50 percent, for a total maximum possible sentence of 7-1/2 years' (90 months') imprisonment. MCL 769.10(1)(a); *Bewersdorf*, 438 Mich at 68-71.

Because defendant's maximum possible sentence was 90 months' imprisonment, the trial court incorrectly informed defendant that his maximum possible sentence was 75 months.[4] Therefore, defendant was not accurately informed of the maximum possible prison sentence as required by MCR 6.302(B). See *Brown*, 492 Mich at 693-694. Because defendant was "not accurately informed of the consequences of his plea as a second-offense habitual offender, he was not able to make an understanding plea under MCR 6.302(B)."[5] *Id.* at 694.

## C. PROCEDURAL CONCERNS

However, this conclusion does not end our inquiry. We note that MCR 6.310(C) describes the process for allowing a defendant to withdraw his or her plea after sentencing. The rule provides:

> *The defendant may file a motion to withdraw the plea within 6 months after sentence. Thereafter, the defendant may seek relief only in accordance with the procedure set forth in subchapter 6.500.* If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea. If the defendant elects to allow the plea and sentence to stand, the additional advice given and inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals. [Emphasis added.]

Here, while defendant raises an appellate challenge to his guilty plea, we note that he has never filed a motion to withdraw his guilty plea. Given that his sentencing occurred in January 2014, he obviously failed to move to withdraw his plea within six months after sentencing. As such, filing a motion to withdraw his plea is no longer an option for defendant. See MCR 6.310(C). Instead, the Court Rules plainly provide that defendant "may seek relief only in accordance with the procedure set forth in subchapter 6.500" by filing a motion for relief from judgment. MCR 6.310(C). See also MCR 6.310(D). Defendant has also failed to do this. Accordingly, we deny his challenge at this time, but without prejudice to his right to file a

---

[4] In calculating defendant's maximum possible sentence to be 75 months (i.e., an increase of 25 percent from the ordinary statutory maximum), it appears that the trial court may have conflated MCL 769.10(1)(a) with MCL 777.21(3)(a), which requires the upper end of a defendant's *minimum* sentence range to be increased by 25 percent.

[5] We reject the prosecution's argument that defendant's plea is deemed knowing and voluntary due to his counsel's brief utterance that he thought the maximum sentence was 7 ½ years. A defendant is entitled to listen to and rely on the representations of the trial court, especially here, where the trial court identified the wrong maximum sentence even after defense counsel's remark. We also reject the prosecution's argument that the trial court's accurate reference to the maximum sentence at the time of sentencing was enough to correct the error; defendant had already entered his plea by that time.

motion for relief from judgment pursuant to MCR 6.500 *et. seq.*[6] See MCR 6.310(C). See also *People v Foster*, 495 Mich 1007; 846 NW2d 558 (2014) (citing MCR 6.310(C) and denying the defendant's application for leave to appeal "without prejudice to the defendant's right to file a motion for relief from judgment pursuant to MCR 6.500 *et seq.*").

In this regard, we note that the remedy prescribed in MCR 6.310(C) is the proper remedy to apply for violations of MCR 6.302(B)(2). See *Brown*, 492 Mich at 699.[7] Thus, assuming defendant is entitled to relief from judgment, he must be informed "of the maximum enhanced sentence before being given the opportunity to elect (1) to allow his plea and sentence to stand or (2) to withdraw it." *Id.* "In the latter event, the matter may proceed to trial." *Id.* at 702. Thus, if defendant prevails on his motion for relief from judgment, he should be given the choice of: (1) allowing his plea and sentence to stand; or (2) withdrawing his plea, in which case the matter may proceed to trial.[8]

### III. DEFENDANT'S SENTENCING CHALLENGES

Because we deny at this time defendant's challenge to the plea proceedings, and in order to inform the parties' future conduct, we consider defendant's challenges to the sentence imposed in this case. Namely, we consider defendant's claims that the trial court erred when it departed from the recommended minimum guidelines range in this case. We conclude that the trial court articulated substantial and compelling reasons for its departure, that those reasons

---

[6] With respect to a motion for relief from judgment, we note that "[i]n order to be entitled to relief under MCR 6.508(D)(3) both 'good cause' and 'actual prejudice' must be established." *People v Kimble*, 470 Mich 305, 313; 684 NW2d 669 (2004). A defendant may demonstrate good cause by, among other matters, proving ineffective assistance of counsel. *Id.* at 314. With regard to "actual prejudice," we note that MCR 6.508(D)(3)(b)(*ii*) provides that "in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand[.]" Here, as noted above, defendant's guilty plea was involuntary.

[7] Although defendant cites to *Brown* in contending that he is entitled to have his "sentence vacated and Mr. Campbell be allowed to withdraw his plea," we note that in *Brown*, the defendant had moved the trial court to withdraw his plea or for resentencing. *Id.* 688. Furthermore, the Supreme Court did not vacate the sentence; rather, it remanded the case to the trial court to allow the defendant the opportunity to withdraw his plea. *Id.* at 699.

[8] In the event that the matter proceeds to trial, we note that there is nothing prohibiting the prosecution from charging defendant as a fourth-offense habitual offender under MCL 769.12, which allows an enhancement of the maximum sentence "to imprisonment for life or a lesser term" for a conviction that is punishable by a term of five or more years' imprisonment, such as MCL 257.625(9)(c)(*i*), the instant offense. See MCL 769.12(1)(b) (permitting a sentence of life imprisonment or a lesser term if the subsequent felony is punishable by a first conviction "by imprisonment for a maximum term of 5 years or more or for life . . . ." Put simply, defendant must be careful what he wishes for when deciding whether to seek to withdraw his plea.

were not given adequate consideration by the guidelines, and that the trial court sufficiently explained why the chosen sentence was more proportionate.

In reviewing a departure from the sentencing guidelines, we review for clear error the trial court's factual finding that a particular factor in support of departure exists. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). Whether the factor is objective and verifiable is a question of law that we review de novo. *Id*. Finally, we review for an abuse of discretion the trial court's determination that the objective and verifiable factors constitute substantial and compelling reasons to depart. *Id*.

Pursuant to MCL 769.34(2), a trial court generally must impose a minimum sentence within the properly calculated legislative guidelines. The trial court may only depart if it articulates, on the record, a substantial and compelling reason for doing so which is objective and verifiable. *Smith*, 482 Mich at 299, citing MCL 769.34(3). Substantial and compelling reasons for departure exist only in exceptional circumstances and the reasons must, to be considered substantial and compelling, "be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention." *Id*. A trial court "may not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record . . . that the characteristic has been given inadequate or disproportionate weight." *Id*. at 300 (citation and quotation marks omitted). Finally, when departing from the sentencing guidelines, the trial court must do more than merely articulate the reason for a departure, but rather must justify the particular departure made. *Id*. at 303-304.

In the case at bar, the trial court commented at sentencing that defendant's

record is terrible. You have eight prior felonies; 12 prior misdemeanors; and you were on parole when this happened. I look at your record, sir, and this is your eighth drunk driving conviction.[9] You have one in '87, another in '87, '94, 2001, 2008, [and] 2010. These are very serious offenses, sir.

The trial court also noted that alcohol was a common theme in defendant's convictions, expressing concern that the offense for which defendant was on parole was "OUIL third," which was the same offense to which defendant pleaded guilty in this case. The court continued along these lines:

I can't tell you how many times in the—this is my eighth year on the bench. I've had numerous family members in here that have lost loved ones because someone like yourself, who I'm sure you're probably a decent person when you're sober, but when you're drinking, you make poor decisions and you put people at risk.

---

[9] By our count, defendant had at least 11 prior convictions for drunken-driving-type offenses.

And for whatever reason, sir, you can't stop drinking. I mean, that tells me that you're consistently drinking. You were on probation—or parole for an OUIL third, and then [you] pick up another one.

Given the fact – and – and I looked at your – your – your record. You have 18 jail sentences. You've been placed on probation six times. And you have three prison sentences.

I realize in this situation, no one was injured. Thank God. But you drove your car into a ditch – or drove this car into a ditch and did some damage to the vehicle.

The trial court then acknowledged that defendant's recommended minimum guidelines range called for a minimum sentence between 12 and 30 months' imprisonment, but stated that "I believe, very firmly, sir, that there are substantial and compelling reasons to go over those Guidelines." The court continued:

I'm aware of People v Melbourne [sic *Milbourn*[10]]. I believe the sentence I'm going to impose is proportionate. I'm aware of People v Smith.[11] And I believe that the issues that I'm concerned about are identifiable and articulable.

Quite frankly, the Sentencing Guidelines don't take into effect that this is your eighth conviction. They don't take into effect that you were already on parole for an OUIL third and you pick up another one.

And quite frankly, I'm concerned that you're going to kill somebody. And I'm also aware of People v Tanner.[12]

But it is the sentence of this Court, sir, that you are committed to the Michigan Department of Corrections to serve a minimum of five years to a maximum of seven and a half [years.]

We first examine the trial court's stated reasons for departure, as alleged by defendant: (1) that this was defendant's "eighth" drunk driving conviction; (2) that defendant was on parole for OUIL third at the time he committed yet another OUIL third offense; and (3) given defendant's behavior, the trial court was "concerned that you're going to kill somebody." For the reasons discussed below, we conclude that the trial court's stated reasons were objective and verifiable and that they were given inadequate weight by the guidelines.

---

[10] *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

[11] *People v Smith*, 482 Mich 292; 754 NW2d 284 (2008).

[12] *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972).

With respect to the first reason for departure—that the instant offense was at least defendant's eighth conviction for a drunken-driving-type offense—we find that the reason was objective and verifiable. See *People v Bosca*, __ Mich App __; __ NW2d __ (Docket No. 317633, issued March 26, 2015) (explaining that a factor is objective and verifiable if it is external to the mind of the sentencing judge and is capable of being verified), slip op at 26. The salient issue with regard to this factor, as defendant recognizes, is whether his previous drunken-driving offenses were already accounted for in the sentencing guidelines. As defendant correctly observes, a trial court "may not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the [PSIR], that the characteristic has been given inadequate or disproportionate weight." *Smith*, 482 Mich at 300 (internal quotations and citation omitted).

We find that the trial court did not err when it determined that the guidelines did not adequately account for the fact that this was at least defendant's eighth drunken-driving-type offense. Read in context, the trial court's remarks at sentencing evidence the court's concern that defendant had a chronic history of driving while intoxicated. Although the Prior Record Variables (PRVs) take into account a defendant's prior criminal history, we find no abuse of discretion in the trial court's determination that the PRVs did not adequately consider that defendant had at least eight convictions for the exact same offense. Indeed, while the PRVs take into account such factors as whether a prior felony was a "high severity felony"—felonies in crime classes M2, A, B, C, or D, see MCL 777.51, "low severity felony"—felonies in crime classes E, F, G, or H, see MCL 777.52, misdemeanors, see MCL 777.55, or juvenile offenses, see MCL 777.53-777.54, the PRVs do not take into consideration that a defendant has repeatedly engaged in the same type of criminal behavior. In this case, the guidelines did not adequately account for the fact that, despite multiple convictions and punishments, defendant had an extensive history of driving while intoxicated. A defendant's persistent struggle with a particular type of offense has been found to be sufficient to justify a departure from the recommended minimum guidelines range. See *People v Solmonson*, 261 Mich App 657, 671-672; 683 NW2d 761 (2004). See also *People v Geno*, 261 Mich App 624, 636; 683 NW2d 687 (2004) (upholding a departure that was based, in part, on the fact that the defendant's conviction was his fourth criminal sexual conduct conviction involving young children and was his second offense involving a two-year-old child).

We also find no error with regard to the trial court's second stated reason for departure—that defendant committed the instant offense while he was on parole for the exact same offense. This factor was objective and verifiable, as it was external to the mind of the trial court and was capable of being confirmed. See *Bosca*, __ Mich App at __, slip op at 26. In addition, we find no abuse of discretion in the trial court's determination that this factor was given inadequate consideration by the guidelines. In so concluding, we note, as does defendant, that MCL 777.56, PRV 6, considers defendant's "relationship to the criminal justice system" and authorizes a score of 10 points if the offender is on "parole, probation, or delayed sentence status or on bond awaiting adjudication or sentencing for a felony" at the time of the sentencing offense.[13]

---

[13] Defendant's Sentencing Information Report reveals a score of 10 points for PRV 6 in this case.

However, PRV 6 merely considers the question of whether the defendant was on parole. It does not consider *why* the defendant was on parole. That is, it does not consider whether a defendant was on parole for the *exact same offense* as the sentencing offense. That a defendant continues to engage in a particular type of illicit conduct, despite intervention by the legal system, can constitute substantial and compelling reasons to justify a departure. See *People v Horn*, 279 Mich App 31, 46; 755 NW2d 212 (2008). Here, the trial court's remarks at sentencing clearly indicate a concern with *why* defendant was on parole, i.e., his habitual involvement in drunken-driving-type offenses, and not the mere fact that defendant was on parole at the time of the instant offense. We find no abuse of discretion in the trial court's determination that defendant's parole violation, which was occasioned by committing the very same offense for which he was on parole and in which he had repeatedly engaged, was not given adequate consideration by the sentencing guidelines.

Next, defendant takes umbrage with the trial court's assertion that "quite frankly, I am concerned that you're going to kill somebody." Defendant argues that this was one of the trial court's stated reasons for departure. Assuming that this was one of the stated reasons for departure,[14] we find no error by the trial court. We agree with defendant that a trial court's mere belief that a defendant will be a danger to others is not an objective and verifiable reason for departure. *Horn*, 279 Mich App at 44-45. However, we note that "objective and verifiable factors underlying this belief—such as repeated offenses and failures at rehabilitation—constitute an acceptable justification for an upward departure." *Id.* "These factors include a history of recidivism, and obsessive or uncontrollable urges to commit certain offenses." *Id.* at 45. In other words, while a trial court's "subjective perception of future risk" will not amount to an objective and verifiable factor, "concrete factors that establish[] a firm probability of future offenses" can suffice. *Id.*

In *Horn*, we concluded that the trial court did not err when it departed from the guidelines based on its conclusion that defendant was a continuing threat to his wife. *Id.* at 44. In that case, the defendant repeatedly perpetrated "vicious acts" against his wife, which involved "escalating acts" and which were described as a "course of merciless aggression" against her, including trying to solicit her murder while he was incarcerated. This Court upheld the trial court's departure, finding that the trial court's conclusion about "anticipatory harm based on an established pattern of violence toward a specific victim is an objective and verifiable factor, not a speculative prediction." *Id.* at 47-48.

Similarly, in *Geno*, 261 Mich App at 636, we upheld as objective and verifiable the trial court's concerns about the future risk defendant posed based on the his "past criminal history of sex crimes with children, his admitted sexual attraction to children, and his repeated failure to rehabilitate himself when given the opportunity."

---

[14] Indeed, it is not clear to us from the context of the trial court's remarks that this was even one of the reasons for departure. Nevertheless, we review this issue as if it were a stated reason for departure.

Turning to the instant case, we find that the trial court's concern was based on objective and verifiable factors, and was proper under the circumstances. Defendant had a long and established history of drinking and driving. This history included a 2005 offense for operating while intoxicated causing serious injury, MCL 257.625(5), as well as the instant offense, which involved crashing a vehicle into a ditch. And, despite numerous convictions for driving while intoxicated, defendant persisted in his behavior. These were "specific characteristics of an offense and an offender that strongly presage future criminal acts" that are objective and verifiable. See *Horn*, 279 Mich App at 45. Thus, contrary to defendant's contentions, the trial court's departure was not based merely on its subjective belief that defendant would kill someone; rather, the trial court emphasized the objective and verifiable factors that defendant had committed at least eight drunken-driving-type offenses and was not dissuaded from committing the offense yet again while on parole for that exact same offense. We find no error in the trial court's reliance on these objective and concrete factors. See *id.* See also *Geno*, 261 Mich App at 636. Further, as noted above, we find no abuse of discretion in the trial court's determination that these factors were not given adequate consideration by the guidelines.

Finally, we find that the trial court justified the extent of its departure. "For a departure to be justified, the minimum sentence imposed must be proportionate to the defendant's conduct and prior criminal history." *Smith*, 482 Mich at 300. This requires "justification for the *particular* departure made" *id.* at 303, including an explanation as to "why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been[,]" *id.* at 304. "The requirement that the trial court justify the extent of the departure is not overly burdensome. The court need only reasonably comply with the statutory articulation requirement in order to facilitate appellate review." *Id.* at 315.

Here, in the context of citing defendant's continuing recidivism and repeated decisions to drink and drive, the trial court cited the guidelines range of 12 to 30 months' imprisonment and then stated that the sentence it was going to impose was proportionate. Thereafter, the court cited *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972),[15] and imposed the highest minimum sentence it could thereunder—60 months—given defendant's 90-month maximum sentence. "[T]he more egregious the offense, and the *more recidivist the criminal*, the greater the punishment." *Smith*, 482 Mich at 305 (citation and quotation marks omitted; emphasis added). The trial court's recognition of the recommended minimum guidelines range and defendant's recidivism, in light of its decision to first recognize and then impose the highest minimum sentence under the guidelines, satisfies us that the court articulated why the sentence imposed was more proportionate than the recommended guidelines sentence. See *Smith*, 482 Mich at 304. What can reasonably be inferred from the trial court's remarks is that the chosen sentence was more proportionate, in light of defendant's recidivism and extensive history of drinking and driving. See *id.* at 318 (holding that while an appellate court may not speculate about reasons for

---

[15] In *Tanner*, 387 Mich at 690, our Supreme Court announced the "two-thirds rule," and held that "any sentence which provides for a minimum exceeding two-thirds of the maximum is improper." See also MCL 769.34(2)(b) ("The court shall not impose a minimum sentence, including a departure, that exceeds 2/3 of the statutory maximum sentence.").

departure that the trial court did not articulate, it may draw reasonable inferences from what the trial court articulated). Although defendant faults the trial court for failing to compare the 60-month minimum sentence with other sentences on the pertinent sentencing grid, the trial court was not required to do so. See *id.* at 309.

Affirmed, but without prejudice to defendant's right to file a motion for relief from judgment.

/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra