**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED MAY 25, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                                    No. 143046

DAVID MARK COLE,

        Defendant-Appellee.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

This case requires us to determine whether MCR 6.302 and constitutional due process require a trial court to inform a defendant pleading guilty or no contest to first-degree criminal sexual conduct (CSC-I) or second-degree criminal sexual conduct (CSC-II) that he or she will be sentenced to mandatory lifetime electronic monitoring, if required by MCL 750.520b(2)(d) or MCL 750.520c(2)(b). We answer this question in the affirmative and hold that mandatory lifetime electronic monitoring is part of the sentence itself. Therefore, at the time a defendant enters a guilty or no-contest plea, the trial court must inform the defendant if he or she will be subject to mandatory lifetime

electronic monitoring. In the absence of this information about a direct and automatic consequence of a defendant's decision to enter a plea and forgo his or her right to a trial, no defendant could be said to have entered an understanding and voluntary plea. Accordingly, we affirm the judgment of the Court of Appeals on this issue.[1]

## I. FACTS AND PROCEEDINGS

Defendant was charged with two counts of CSC-II under MCL 750.520c(1)(a), for sexual acts involving one of his stepdaughters, who was under the age of 13 at the time of the offenses. Pursuant to an evaluation under *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993), the trial court agreed not to exceed a five-year minimum term of imprisonment for each charge, with the sentences to run concurrently.[2] At the June 2, 2009 plea hearing, the prosecution read both CSC-II counts and described them as being punishable by up to 15 years in prison and requiring mandatory testing for sexually transmitted diseases. Defendant indicated to the trial court that he understood the CSC-II charges and that he faced a maximum penalty of 15 years' imprisonment. The trial court

---

[1] We also granted leave to appeal to examine whether information about mandatory lifetime electronic monitoring must be included in the terms of a sentence evaluation rendered by a trial court under *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993). The Court of Appeals answered this question in the affirmative, as an alternative ground for the panel's decision to remand. Because of our resolution of the primary issue, we need not decide at this time whether a trial court must advise a defendant that his sentence will include mandatory lifetime electronic monitoring at the time the trial court renders a sentence evaluation under *Cobbs*.

[2] Defendant was also charged in a separate file with two counts of possessing child sexually abusive material and two counts of using a computer to commit a crime after police found child pornography on his computer. Defendant's no-contest plea was to all charges in both files, but only defendant's CSC-II convictions are at issue in this appeal.

stated that it had agreed to a five-year concurrent cap on the minimum sentence, but that it had made no other agreement with regard to the plea or the sentence. The trial court never informed defendant that, if sentenced to prison, he would be subject to mandatory lifetime electronic monitoring.

On June 30, 2009, the trial court imposed concurrent sentences of 5 to 15 years on each count, in accordance with the *Cobbs* evaluation. In addition—and as required by MCL 750.520c(2)(b)—the court ordered that defendant be placed on lifetime electronic monitoring following his release from prison.[3]

Defendant moved to amend the judgment of sentence or permit withdrawal of his plea, arguing in part that the failure to advise him of the mandatory penalty of lifetime electronic monitoring rendered his plea involuntary. The trial court denied the motion, and defendant sought leave to appeal. In a split opinion, the Court of Appeals reversed the trial court and remanded to allow defendant the opportunity to withdraw his plea. *People v Cole*, unpublished opinion per curiam of the Court of Appeals, issued March 15, 2011 (Docket No. 298893). The majority held that mandatory lifetime monitoring was not a collateral consequence of the plea or sentence, but was part of the sentence itself. We granted the prosecution's application for leave to appeal. 490 Mich 869 (2011).

---

[3] Subsection (2)(b) of the CSC-II statute, MCL 750.520c(2)(b), provides that, in addition to the prescribed term of imprisonment, "the court shall sentence the defendant to lifetime electronic monitoring under [MCL 750.520n] if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age." MCL 750.520n similarly provides that a defendant who commits CSC-I or CSC-II against a person under age 13 when the defendant was 17 or older must be sentenced to lifetime electronic monitoring and prescribes penalties for violations of the monitoring program.

II. STANDARD OF REVIEW AND RULES OF STATUTORY INTERPRETATION

A trial court's decision on a motion to withdraw a plea is reviewed for an abuse of discretion. *People v Lang*, 381 Mich 393, 398-399; 162 NW2d 143 (1968). The proper interpretation and application of a court rule is a question of law that is reviewed de novo. *Haliw v Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005). To the extent that this case implicates constitutional issues, they are likewise reviewed de novo. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

We also review de novo issues of statutory interpretation. *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). Our primary task when interpreting statutes is to "give effect to the Legislature's intent, focusing first on the statute's plain language." *Id.* at 296. If the statutory language is unambiguous, we must conclude that the Legislature "intended the meaning clearly expressed" and "[n]o further judicial construction is required or permitted." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

III. ANALYSIS

A. MCR 6.302

Guilty- and no-contest-plea proceedings are governed by MCR 6.302.[4] The first sentence of subrule (A) provides that a "court may not accept a plea of guilty or nolo

---

[4] MCR 6.302 provides, in relevant part:

> (A) Plea Requirements. The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).

4

contendere unless it is convinced that the plea is understanding, voluntary, and accurate." MCR 6.302(A). The second sentence mandates that the court "place the defendant or defendants under oath and personally carry out subrules (B)-(E)." *Id.* Subrules (B) through (D), in turn, individually address the "understanding, voluntary, and accurate" requirements of subrule (A), and subrule (E) addresses "Additional Inquiries," including the requirement that the court ask the attorneys "whether the court has complied with subrules (B)-(D) . . . ."

The prosecution argues that a trial court's compliance with subrules (B) through (D) equates to full compliance with the "understanding, voluntary, and accurate" requirements of subrule (A). In regard to whether a trial court must inform a defendant at a plea hearing that he or she will be subject to mandatory lifetime electronic monitoring, the prosecution argues that because subrule (B)(2) only requires that the court inform the defendant of "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law," MCR 6.302(B)(2), the trial court did not err when it informed defendant at the plea hearing of only the statutory maximum term of

---

(B) An Understanding Plea. Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:

\* \* \*

(2) the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law . . . .

5

imprisonment and the minimum term the court had previously agreed to, yet did not inform defendant that he would be subject to mandatory lifetime electronic monitoring.[5]

While we agree that MCR 6.302(B) through (E) constitute explicit requirements imposed on a trial court conducting a plea hearing, the broader directive of MCR 6.302(A) that the plea must be "understanding, voluntary, and accurate" might, in a given proceeding, encompass more than the explicit requirements of the remainder of the court rule. Specifically, the "understanding, voluntary, and accurate" components of subrule (A) are premised on the requirements of constitutional due process, which might not be entirely satisfied by compliance with subrules (B) through (D). Therefore, regardless of the explicit wording of the subrules, a court may be required by the Due Process Clause of the Fourteenth Amendment to inform a defendant that mandatory lifetime electronic monitoring is a consequence of his or her guilty or no-contest plea.

---

[5] The prosecution reasonably argues that the use in MCR 6.302(B)(2) of the term "maximum possible prison sentence" means that "any mandatory minimum sentence required by law" refers only to a mandatory minimum *prison* sentence. Although it is not necessary to conclusively opine on the prosecution's argument, the mandatory lifetime electronic monitoring requirement of the CSC-I and CSC-II statutes could also reasonably be encompassed by the term "mandatory minimum sentence required by law." As explained further in this opinion, lifetime electronic monitoring is a "sentence" because the Legislature intended it to be an additional punishment. And because a trial court sentencing a defendant to prison has no discretion and must impose lifetime monitoring when required by the CSC-I or CSC-II statutes, it is also "mandatory" and "required by law." Finally, by requiring that defendants be subject to electronic monitoring for the rest of their lives, the electronic monitoring provisions include a durational component consistent with the use in MCR 6.302(B)(2) of the term "minimum."

6

## B. THE REQUIREMENTS OF CONSTITUTIONAL DUE PROCESS

A no-contest or a guilty plea constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Boykin v Alabama*, 395 US 238, 243; 89 S Ct 1709; 23 L Ed 2d 274 (1969); *People v Jaworski*, 387 Mich 21, 28-29; 194 NW2d 868 (1972).[6] For a plea to constitute an effective waiver of these rights, the Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing. *McCarthy v United States*, 394 US 459, 466; 89 S Ct 1166; 22 L Ed 2d 418 (1969); see also *North Carolina v Alford*, 400 US 25, 31; 91 S Ct 160; 27 L Ed 162 (1970) (noting that a plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant"). In *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970), the United States Supreme Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." In assessing voluntariness, the Court stated that a defendant entering a plea must be "fully aware of the direct consequences" of the plea. *Id.* at 755, quoting *Shelton v United States*, 246 F2d 571, 572 n 2 (CA 5, 1957) (citation and quotation marks omitted).

---

[6] No-contest pleas are essentially admissions of all the elements of the charged offense and are treated the same as guilty pleas for purposes of the case in which the no-contest plea is entered. See *Lott v United States*, 367 US 421, 426; 81 S Ct 1563; 6 L Ed 2d 940 (1961); *People v New*, 427 Mich 482, 493 n 10; 398 NW2d 358 (1986). Indeed, other than the means by which a court determines the accuracy of the plea under subrule (D)(2), MCR 6.302 recognizes no distinction between no-contest and guilty pleas for purposes of the plea hearing. Therefore, for purposes of this opinion, we discuss no-contest and guilty pleas synonymously.

Given the difficulty of determining which of the numerous consequences of a conviction are encompassed within the meaning of "direct consequences," a distinction has developed in the post-*Brady* caselaw between "direct" and "collateral" consequences of a plea. See, e.g., *Meyer v Branker*, 506 F3d 358, 367-368 (CA 4, 2007) ("For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea."); *Steele v Murphy*, 365 F3d 14, 17 (CA 1, 2004). While courts have relied on different tests to distinguish direct from collateral consequences, the prevailing distinction relied on by a majority of courts "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cuthrell v Patuxent Institution Director*, 475 F2d 1364, 1366 (CA 4, 1973); see also Roberts, *The mythical divide between collateral and direct consequences of criminal convictions: Involuntary commitment of "sexually violent predators"*, 93 Minn L R 670, 689-693 (2008) (discussing the three main tests and listing relevant cases).

"The most obvious 'direct consequence' of a conviction is the penalty to be imposed. It is, therefore, well-recognized that the defendant must be apprised of the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Blankenship v State*, 858 SW2d 897, 905 (Tenn, 1993). In determining whether a statute imposes punishment or is nonpunitive, the United States Supreme Court has applied a well-established framework:

> If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" [*Smith v Doe*, 538 US 84, 92;

8

123 S Ct 1140; 155 L Ed 2d 164 (2003) (alteration in original; citations omitted).]

## C.  APPLICATION

While there is considerable debate about the exact placement of the dividing line between the collateral and direct consequences of a plea, see *Padilla v Kentucky*, 559 US ___; 130 S Ct 1473, 1481 n 8; 176 L Ed 2d 284 (2010), we need not explore this oft-nuanced distinction because we agree with the Court of Appeals that mandatory lifetime electronic monitoring is *part of the sentence itself.*  Because lifetime electronic monitoring is part of the sentence itself, it is a direct consequence of a guilty or no-contest plea to a charge of CSC-I—or CSC-II involving a victim under age 13 and a defendant 17 or older—when the defendant is sentenced to prison.[7]

Our conclusion that mandatory lifetime electronic monitoring is part of the sentence itself rests on the plain text of the relevant statutes.  First, we note that our

---

[7] As previously noted, MCL 750.520c(2)(b)—the provision setting forth the punishment for CSC-II—only requires mandatory lifetime electronic monitoring when the victim is under 13 years of age and the defendant is 17 or older.  MCL 750.520b(2)(d)—the provision setting forth the punishment for CSC-I—appears, however, to require mandatory lifetime electronic monitoring for all defendants, regardless of the ages of the victim and the defendant.  We recognize that a conflict may exist between the text of MCL 750.520b(2)(d) and MCL 750.520n(1), which arguably imposes the under-13 and 17-or-older age conditions on the lifetime electronic monitoring requirement of the CSC-I statute.  However, we need not resolve the possible conflict at this time because the case before us does not involve a CSC-I charge and we recently remanded a case to the Court of Appeals for consideration as on leave granted to address this precise issue.  See *People v Sword*, 490 Mich 871 (2011).  It would be improvident for us to address this issue without the benefit of the Court of Appeals' resolution in *Sword*.

Pursuant to *People v Kern*, 288 Mich App 513, 522-523; 794 NW2d 362 (2010), only defendants sentenced to prison—not those sentenced to probation or jail—are subject to lifetime electronic monitoring.

Legislature chose to include the mandatory lifetime electronic monitoring requirement in the penalty sections of the CSC-I and CSC-II statutes, and that both statutes can be found in the Michigan Penal Code, which describes criminal offenses and prescribes penalties.

Second, both electronic-monitoring provisions provide that "the court *shall sentence* the defendant to lifetime electronic monitoring . . . ." MCL 750.520b(2)(d) and MCL 750.520c(2)(b) (emphasis added). The use of the directive "shall sentence" indicates that the Legislature intended to make lifetime electronic monitoring part of the sentence itself. Third, the CSC-II statute provides that the sentence of lifetime electronic monitoring is "[i]n addition to the penalty specified in subdivision (a)," MCL 750.520c(2)(b), and the CSC-I statute provides similarly that lifetime electronic monitoring is "[i]n addition to any other penalty imposed under subdivision (a) or (b)," MCL 750.520b(2)(d). The language "in addition to" indicates that the Legislature intended that lifetime electronic monitoring would itself be a penalty, in addition to the term of imprisonment imposed by the court.

Finally, our conclusion that the Legislature intended to make lifetime electronic monitoring a punishment and part of the sentence itself is reinforced by MCL 750.520n(1), which likewise includes the language "shall be sentenced," and MCL 791.285(1) and (2), which use the language "individuals . . . who are sentenced . . . to lifetime electronic monitoring" and "[a]n individual who is sentenced to lifetime electronic monitoring . . . ."[8]

---

[8] MCL 791.285 prescribes the duties of the Department of Corrections in establishing and administering the lifetime electronic monitoring program.

10

Accordingly, a plain reading of the relevant statutory text compels our conclusion that the Legislature intended mandatory lifetime electronic monitoring to be an additional punishment and part of the sentence itself when required by the CSC-I or CSC-II statutes. Thus, under *Smith*'s framework, our analysis ends. *Smith*, 538 US at 92 ("If the intention of the legislature was to impose punishment, that ends the inquiry."). When a defendant pleads guilty or no-contest and is sentenced to prison for a charge of CSC-I or CSC-II, and the controlling statute mandates lifetime electronic monitoring, the sentence of mandatory lifetime electronic monitoring constitutes a result of the plea that has "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cuthrell*, 475 F2d at 1366.

We hold, therefore, that mandatory lifetime electronic monitoring is a direct consequence of a plea. Accordingly, when the governing criminal statute mandates that a trial court sentence a defendant to lifetime electronic monitoring, due process requires the trial court to inform the defendant entering the plea that he or she will be subject to mandatory lifetime electronic monitoring. And because MCR 6.302 is premised on constitutional due-process requirements, a defendant who will be subject to mandatory lifetime electronic monitoring must be so advised by the trial court at the time of the plea hearing in order to satisfy the court rule's requirement that the plea be understanding and voluntary.

To hold otherwise would not only offend due process, but would be inconsonant with the practical rationale underlying the requirement that a plea be knowing and voluntary. When a defendant agrees to plead guilty, he or she is making a bargain, giving up trial rights in exchange for some perceived benefit. In order for a defendant to

11

accurately assess the benefits of the bargain being considered, the defendant must be aware of the immediate consequences that will flow directly from his or her decision. Without information about a consequence of a sentence deemed by our Legislature to be punishment, which here entails having to wear a device and be electronically tracked "from the time the individual is released on parole or from prison until the time of the individual's death," MCL 791.285(1)(a), it cannot be said that a defendant was aware of the critical information necessary to assess the bargain being considered.

## IV. CONCLUSION

We hold that mandatory lifetime electronic monitoring for convictions of CSC-I and CSC-II is part of the sentence itself and is therefore a direct consequence of a defendant's guilty or no-contest plea. As a result, at the time a defendant enters a guilty or no-contest plea, the trial court must inform the defendant if he or she will be subject to lifetime electronic monitoring. Accordingly, we affirm the judgment of the Court of Appeals and remand this case to the trial court to allow defendant the opportunity to withdraw his plea.[9] We do not retain jurisdiction.

Michael F. Cavanagh
Robert P. Young, Jr.
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

---

[9] As stated in footnote 1 of this opinion, we decline to decide at this time whether information about mandatory lifetime electronic monitoring must be included in the terms of a sentence evaluation under *Cobbs*.

12