*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES ERROL WARNER,

Defendant-Appellant.

UNPUBLISHED
April 9, 2020

No. 343419
Kent Circuit Court
LC No. 16-009942-FC

Before: O'BRIEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant pleaded nolo contendere to one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (personal injury). Defendant filed a motion to withdraw his plea, which the trial court denied. The trial court sentenced defendant to 10 to 40 years' imprisonment. Defendant appealed the trial court's denial of his motion to withdraw his plea, but this Court denied his application.[1] Defendant then appealed to the Michigan Supreme Court, who remanded the case to this Court for consideration as on leave granted.[2] We affirm.

Defendant pleaded nolo contendre to one count of CSC-I. Before accepting the plea, the trial court informed defendant that he would be subject to lifetime electronic monitoring upon his release. Defendant said that he did not have any questions and that he understood the plea. Thereafter, defendant moved to withdraw the plea, arguing in part that he was unaware that lifetime electronic monitoring was effectuated with a GPS tether and that he would be assessed costs for the monitoring. The trial court denied defendant's motion and sentenced defendant to 10 to 40 years' imprisonment in accord with his plea agreement.

---

[1] *People v Warner*, unpublished order of the Michigan Court of Appeals, entered June 14, 2018 (Docket No. 343419).

[2] *People v Warner*, 503 Mich 922 (2018).

Defendant argues that the trial court erred in denying his motion to withdraw the plea because he did not understand the nature of lifetime electronic monitoring. We disagree.

"We review a trial court's decision on a motion to withdraw a plea for an abuse of discretion." *People v Billings*, 283 Mich App 538, 549; 770 NW2d 893 (2009). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

MCR 6.310(B) provides the circumstances where a defendant may withdraw a plea after acceptance but before sentencing. It states, in relevant part, "[i]f a defendant's motion [to withdraw a plea] is based on an error in the plea proceeding, the court must permit the defendant to withdraw the plea if it would be required by [MCR 6.310(C)]." MCR 6.310(B)(1). As pertinent to this case, MCR 6.310(C)(4) provides:

> If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea.

"A no-contest or a guilty plea constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers." *People v Cole*, 491 Mich 325, 332-333; 817 NW2d 497 (2012). "For a plea to constitute an effective waiver of these rights, the Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing." *Id*. at 333. For a plea to be voluntary and knowing, "a defendant entering [the] plea must be fully aware of the direct consequences of the plea." *Id*. (quotation marks and citation omitted).

The Michigan Supreme Court has held that lifetime electronic monitoring is a "direct consequence" of a plea:

> We hold, therefore, that mandatory lifetime electronic monitoring is a direct consequence of a plea. Accordingly, when the governing criminal statute mandates that a trial court sentence a defendant to lifetime electronic monitoring, due process requires the trial court to inform the defendant entering the plea that he or she will be subject to mandatory lifetime electronic monitoring. And because MCR 6.302 is premised on constitutional due-process requirements, a defendant who will be subject to mandatory lifetime electronic monitoring must be so advised by the trial court at the time of the plea hearing in order to satisfy the court rule's requirement that the plea be understanding and voluntary. [*Id*. at 337.]

The trial court satisfied its burden to inform defendant that mandatory lifetime electronic monitoring was part of his plea. At the plea hearing, the trial court stated:

> If you plead no contest or are found guilty as a result of trial, the maximum possible sentence that can be imposed is life or any term of years up to life in prison, *and there is mandatory lifetime electronic monitoring once released from prison.*

-2-

You're not going to be punished or rewarded depending on what plea you make. Do you understand that? [Emphasis added.]

Defendant responded that he understood. The trial court then listed all the rights that defendant was giving up and asked defendant if he had any questions about his rights; defendant responded "no."

A review of this exchange between the trial court and defendant shows that the trial court satisfied its burden under MCR 6.302 to inform defendant of the direct consequences of his plea agreement. This included the trial court's apprising defendant that he would be subject to lifetime electronic monitoring upon his release from prison. Defendant said that he did not have any questions about this consequence of his plea agreement. He was therefore fully apprised of the direct consequences of his plea agreement, and his plea was voluntarily and knowingly made.

Defendant argues that his plea was not voluntary and knowing because he was unaware of the nature of the electronic monitoring—he did not know that electronic monitoring required GPS tracking, nor that he would be responsible for costs associated with the monitoring. We conclude, however, that the methods and costs of lifetime electronic monitoring were collateral consequences to defendant's plea, so the trial court was not required to apprise defendant of them.

The Michigan Supreme Court has explained: "Given the difficulty of determining which of the numerous consequences of a conviction are encompassed within the meaning of 'direct consequences,' a distinction has developed in the post-*Brady*[3] caselaw between 'direct' and 'collateral' consequences of a plea." *Cole*, 491 Mich at 333. "While courts have relied on different tests to distinguish direct from collateral consequences, the prevailing distinction relied on by a majority of courts turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id*. at 333-334 (quotation marks and citation omitted). This Court has characterized the following as "collateral consequences" of a sentence:

> . . . the loss of employment, loss of the right to vote, loss of the right to travel freely abroad, loss of the right to a driver's license, loss of the right to possess firearms, a plea's possible enhancing effects on a subsequent sentence, institution of separate civil proceedings against the defendant for commitment to a mental-health facility, loss of good-time credit, possibility of imposition of consecutive sentences, possibility of undesirable discharge from the armed forces, disqualification from public benefits, and loss of business or professional licenses. [*People v Fonville*, 291 Mich App 363, 385; 804 NW2d 878 (2011) (footnotes omitted).]

One direct consequence of defendant's plea was lifetime electronic monitoring. See *Cole*, 491 Mich at 337. The methods of implementing that lifetime electronic monitoring—like the use of a GPS tether—and the costs imposed on defendant for the monitoring are collateral

---

[3] *Brady v United States*, 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970).

consequences. The punishment is the lifetime electronic monitoring; the methods and costs of implementing that punishment are not, themselves, punitive.[4] Thus, they are more akin to the collateral consequences of a plea referred to in *Fonville*, 291 Mich App at 385, than they are to a direct consequence that is "part of the sentence itself," *Cole*, 491 Mich at 335. Neither the methods used to implement lifetime electronic monitoring nor the cost of that monitoring results in a definite, immediate, and largely automatic effect on the range of the defendant's punishment. *Id.* at 334. As collateral consequences, the trial court was not required to advise defendant of the means and costs of lifetime electronic monitoring before accepting defendant's plea. *Id.* at 335. And because "[a] defendant's ignorance of the collateral consequences of a plea does not render the plea involuntary," *Fonville*, 291 Mich App at 385, we conclude for the reasons already stated that defendant's plea was voluntarily and knowingly made. The trial court did not abuse its discretion in denying defendant's motion to withdraw the plea.

Defendant argues that defense counsel was ineffective for failing to advise him of the specifics of lifetime electronic monitoring. However, this Court has previously held that "[c]ounsel's failure to properly advise of collateral consequences of a plea does not bear on whether a defendant properly understood the decision to plead guilty to the charges in question." *Id.* Accordingly, even if defense counsel failed to advise or erroneously advised defendant of the particulars of lifetime electronic monitoring, this deficiency did not have any bearing on whether defendant voluntarily and knowingly accepted the plea because the particulars were merely collateral consequences. The trial court advised defendant of the direct consequences of his plea, and he voluntarily and knowingly agreed to the plea. Defendant was not denied the effective assistance of counsel. See *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000).

Finally, in a Standard 4 brief, defendant argues that the prosecutor engaged in misconduct. The exact grounds of defendant's argument are difficult to decipher, but to the extent defendant argues that his plea was not voluntarily and knowingly made and that he was denied a fair plea

---

[4] Many states consider costs to be a collateral consequence of a plea because, unlike fines, costs are compensatory in nature. See, e.g., *People v Jones*, 223 Ill 2d 569, 581; 861 NE2d 967 (2006) ("Unlike a fine, which is punitive in nature, a cost does not punish a defendant in addition to the sentence he received, but instead is a collateral consequence of the defendant's conviction that is compensatory in nature."); *Com v Rivera*, 95 A3d 913, 916; 2014 PA Super 140 (2014) ("Costs and restitution are akin to collateral consequences. Conversely, fines are considered direct consequences and, therefore, punishment."); *Thomas v State*, 445 SW3d 288, 291 (Tex App, 2013) ("Court costs are not punitive, but merely a collateral consequence of the defendant's conviction."). See also *People v Fisher*, 189 Colo 297, 300; 539 P2d 1258 (1975) (holding that a trial court need not allow a defendant who was not informed that he could be assessed costs to withdraw his guilty plea); *Hermann v State*, 249 Ga App 535, 536-537; 548 SE2d 666 (2001) (holding that "unanticipated costs associated with [the defendant's] sentence" was a collateral consequence of his guilty plea).

As for the method used to effectuate lifetime electronic monitoring, we fail to see how this could be anything but a collateral consequence. Defendant was informed that he would be subject to lifetime electronic monitoring, which is all that is being done through the use of a GPS tether or any other method used to effectuate the monitoring.

process, these arguments lack merit, as previously discussed. Defendant's only argument that we can decipher is where he seems to argue that the prosecutor acted improperly when she "remained silent" during his plea. This was not misconduct.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola