*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DENISE ANN FLORA,

        Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 355305
Cass Circuit Court
LC No. 17-010326-FH

Before: MURRAY, C.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying her motion to withdraw her guilty plea entered at a probation revocation hearing. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 76 months to 30 years' incarceration for methamphetamine possession with intent to deliver, MCL 333.7401(2)(b)(*i*); 19 months to 30 years' incarceration for methamphetamine possession, MCL 333.7403(2)(b)(*i*); 24 months to 30 years' incarceration for marijuana possession with intent to deliver, MCL 333.7401(2)(d)(*iii*); 24 months to 30 years' incarceration for each of two counts of delivery of a controlled substance, MCL 333.7401(2)(c); 59 days' incarceration for each of two counts of possession of a controlled substance, MCL 333.7403(2)(b)(*ii*); and 59 days' incarceration for subsequent-offense possession of marijuana, MCL 333.7403(2)(d); MCL 333.7413. On appeal, defendant argues that the trial court erred when it denied her motion to withdraw her plea to a probation violation. Defendant also argues that she is entitled to resentencing because her sentence was not proportionate and the trial court should have departed downward. We affirm.

## I. FACTS AND PROCEEDINGS

In October 2017, a police officer observed defendant drive through a red light. During an ensuing stop, the officer learned that defendant had recently been convicted of methamphetamine-

---

[1] *People v Flora*, unpublished order of the Court of Appeals, entered December 22, 2020 (Docket No. 355305).

related crimes, and defendant consented to a search of her vehicle. During that search, the officer discovered marijuana and methamphetamine, and approximately $1,661 in cash.

In March 2018, defendant pleaded guilty to several drug charges and to violating her probation for a previous conviction. The trial court sentenced defendant to 30 months' probation. A condition of that probation was that defendant "must not use or possess any controlled substances or drug paraphernalia." Nineteen months later, in October 2019, defendant's probation officer alleged that defendant had violated her probation by using methamphetamine. In response to the allegation, defendant waived her right to counsel, and the trial court then found defendant guilty of that probation violation.

In February 2020, defendant's probation officer again alleged that defendant violated her probation by using methamphetamine. The trial court held a hearing, which it styled a "probation-violation plea." Defendant appeared *in propria persona*. After the trial court explained the charges and potential term of incarceration if defendant pleaded guilty, defendant declined representation by counsel. Defendant then pleaded guilty to the probation violation, the trial court again informed her that she had the right to counsel at sentencing, and it then appointed counsel at defendant's request.

The trial court subsequently conducted a sentencing hearing. For that sentencing, defendant's presentence information report (PSIR) calculated her minimum sentencing guidelines range at 84 to 280 months. At the hearing, defendant described herself as having a life-long addiction to drugs, and she acknowledged her need for help and credited the Swift and Sure Program[2] (SSP) with saving her life. She expressed her wish that that program could go on longer. Defense counsel stated that the department of corrections recommended sentencing defendant at the bottom of the sentencing guidelines range, but that was not reflective of "all her conduct" and was "based purely on . . . the positive drug tests and nothing more. There's nothing else in this report to suggest that her efforts at sobriety were insincere." The trial court then revoked defendant's probation and sentenced her to 76 months to 30 years' incarceration for the most serious charge, as well as the various concurrent terms for the lesser charges as described previously.

In August 2020, defendant moved to withdraw her plea and for a resentencing. Defendant argued that she had not been properly advised of her right to counsel at the hearing when she pleaded guilty to the probation violation in February 2020. Specifically, defendant argued that she was not informed that an attorney was available *even if she could not afford one* before she pleaded guilty. In addition, defendant argued that the trial court erred by imposing a disproportionate sentence because it failed to depart downward from the sentencing guidelines in acknowledgment of her completion of the SSP.

---

[2] The Swift and Sure Sanctions Probation Program is an intensive probation supervision program that targets high-risk felony offenders with a history of probation violations or failures. See MCL 771A.1 *et seq*.; Michigan Courts, *Swift and Sure Sanctions Probation Program (SSSPP)* <https://www.courts.michigan.gov/administration/court-programs/swift-and-sure-sanctions-probation-program/> (accessed October 20, 2021).

At the hearing on defendant's motions, the trial court reiterated the conversation between defendant and the trial court at her plea hearing about her right to proceed with an attorney before she pleaded guilty. The court again memorialized that defendant indicated she did not wish to be represented by one. The trial court also observed that defendant had been before the court many times, including entering multiple pleas. The trial court stated that "she understood her right to be represented by an attorney, and I'm satisfied there's been compliance with the court rule." The trial court thus denied the motion to withdraw the plea. The trial court also denied the motion for resentencing, noting that its respective sentences were either within or below the applicable guidelines range. Defendant now appeals.

## II. RIGHT TO COUNSEL

Defendant argues that the trial court failed to specifically advise her that she was entitled to a court-appointed attorney before she entered a guilty plea to the probation violation. Therefore, defendant argues, she did not make a knowing and intelligent waiver of her right to counsel.

"When assessing the validity of a defendant's waiver of the right of counsel, we review de novo the entire record to determine whether the trial court's factual findings regarding the waiver were clearly erroneous." *People v Willing*, 267 Mich App 208, 218; 704 NW2d 472 (2005). "To the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id*. at 219 (cleaned up). "A trial court's decision on a motion to withdraw a plea is reviewed for an abuse of discretion." *People v Cole*, 491 Mich 325, 329; 817 NW2d 497 (2012).

MCR 6.445 provides, in pertinent part, as follows with respect to the procedures at a probation revocation hearing:

> (B) Arraignment on the Charge. At the arraignment on the alleged probation violation, the court must
>
> * * *
>
> (2) advise the probationer that
>
> (a) the probationer has a right to contest the charge at a hearing, and
>
> (b) the probationer is entitled to a lawyer's assistance at the hearing and at all subsequent court proceedings, and that the court will appoint a lawyer at public expense if the probationer wants one and is financially unable to retain one,
>
> (3) if requested and appropriate, appoint a lawyer . . . .
>
> * * *
>
> (F) Pleas of Guilty. The probationer may, at the arraignment or afterward, plead guilty to the violation. Before accepting a guilty plea, the court, speaking directly to the probationer and receiving the probationer's response, must

(1) advise the probationer that by pleading guilty the probationer is giving up the right to a contested hearing and, if the probationer is proceeding without legal representation, the right to a lawyer's assistance as set forth in subrule (B)(2)(b) . . . .

"Pursuant to MCR 6.445[,] . . . due process is satisfied in a probation revocation proceeding if a trial court advises a defendant of his right to counsel and the appointment of counsel, if he is indigent, and determines if there is a knowing and intelligent waiver of that right." *People v Belanger*, 227 Mich App 637, 647; 576 NW2d 703 (1998). "Factors to be considered when deciding whether defendant had made a knowing waiver of his right to counsel are defendant's age, education, prior criminal experience, mental state, financial condition, and the various factors, pressures or inducements which led him to admit the allegations against him without the assistance of counsel." *People v Kitley*, 59 Mich App 71, 76; 228 NW2d 834 (1975).

At the plea hearing for defendant's probation violation, the trial court meticulously walked through the maximum penalties of the most serious charges and the punitive implications for defendant if she were found guilty. The trial court stated that defendant had the right to an attorney and to a probation violation hearing, before asking defendant if she wished to proceed without an attorney. Defendant stated plainly that she understood the consequences and did not wish to be represented by counsel. Specifically, the exchange was as follows:

> *The Court*: In this matter—in these matters, you do have the right to be represented by an attorney and you do have the right in these matters to have a probation violation hearing. So let me ask you, do you wish to be represented by an attorney in these matters?
>
> *The Defendant*: No.
>
> *The Court*: No; did you intend to plead guilty to these charges?
>
> *The Defendant*: Yes.

Defendant then proceeded to plead guilty to the probation violation.

Approximately five months after her sentence had been imposed, defendant moved to withdraw her guilty plea. At the hearing on that motion, the trial court in effect stated that, even if it did not expressly inform defendant that she was entitled to counsel at public expense, it was confident that defendant understood the scope of her rights. The trial court observed that it had duly informed defendant that she had the right to an attorney and that she was familiar with criminal proceedings, including plea entry.

Accordingly, we find no factual or legal error in the trial court's reasoning. The record indicates that defendant had an extensive criminal history and a history of pleading guilty. The trial court properly took those considerations into account. See *id.* at 76. Given defendant's history with the criminal justice system, it is logical to conclude that she understood the "right to be represented by an attorney" as encompassing the right to be represented by an attorney appointed by the court "at public expense." See MCR 6.445(B)(2)(b). Importantly, moments after defendant pleaded guilty, she did request, and was assigned, counsel for her sentencing hearing. She

requested, by name, the same attorney who had represented her during her previous drug-offense proceedings:

> *The Court*:  Let me ask you, you do have a right at sentencing to have an attorney, and even though you pled guilty today without an attorney, you still would have a continuing right so you could have an attorney represent you at sentencing.
>
> Do you want to be represented by an attorney at sentencing?
>
> *The Defendant*:  I don't know.
>
> *The Court*:  You don't know?
>
> *The Defendant*:  I mean, I—
>
> *The Court*: Pardon?
>
> *The Defendant*:  —that would be fine.
>
> *The Court*:  Okay; why don't we go ahead—who represented you before?
>
> *The Defendant*:  Drake.
>
> *The Court*:  Rob Drake; why don't we—were you comfortable with Mr. Drake?
>
> *The Defendant*:  Yeah.
>
> *The Court*:  Okay; why don't we go ahead and appoint Attorney Drake? . . .

As shown, that attorney was court-appointed, so there is no doubt that defendant was aware that the right to an attorney encompassed a right to an attorney at public expense.  Nor is there any doubt that the trial court understood that she was aware of her rights in this regard.

Consequently, we find no violation of MCR 6.445 or due process.  Although the trial court did not expressly state that defendant's right to counsel included the right to an attorney *at public expense*, that fact was implicitly communicated to defendant by the trial court when it informed her about her "right to be represented by an attorney."  Moreover, given that defendant subsequently invoked her right to be represented by an attorney at public expense at sentencing, it is apparent that she fully understood the nature of her right to an attorney when she was arraigned and pleaded guilty.  Accordingly, we conclude that the trial court did not abuse its discretion by denying her motion to withdraw her plea.

### III. SENTENCE

Next, defendant argues that the trial court erred by failing to depart downward from the sentencing guidelines.

We review the issue of whether a trial court properly imposed a sentence that was proportionate to the offender and the offense for an abuse of discretion. See *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A trial court abuses its sentencing discretion when the sentence imposed is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* at 460 (quotation marks and citation omitted). "[D]epartures are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing." *People v Milbourn*, 435 Mich 630, 657; 461 NW2d 1 (1990).

Here, the minimum sentencing guidelines range was 84 to 280 months' incarceration. The trial court sentenced defendant to 76 months to 30 years' incarceration for methamphetamine possession with intent to deliver, the most serious offense, and sentenced defendant within the guidelines for the remaining sentences. Thus, the trial court departed downward by eight months. Indeed, the trial court acknowledged its decision to depart downward, explaining as follows when addressing defendant's motion for resentencing:

> [O]n the Count I charge, which is the delivery of methamphetamine as a fourth offense, her guideline range, as was calculated at the original sentence, was 84 to 280, and she was given 76 months to 30 years, so she was given below what had been the calculated guidelines by the Court.
>
> * * *
>
> But on the most serious offense the Court did give—take into consideration what she'd done and what she'd participated (sic), and the Court went below the calculated guidelines. So I understand you indi—and your brief indicates that the Court could go below those guidelines; I think the Court did, and I think the Court did give her consideration for the things that she had done, but the Court also had to look at the fact of what she continued to do. Even though—it's one thing to participate in programs and complete them, and it's easy to say that they completed the program, but if they don't follow through and use the tools that they've gained in those programs, to what extent should they be rewarded, you know? And I think she was rewarded with a sentence below the guidelines, anyway, and so she as [sic] given credit for that. But again, she—she did continue to violate, did continue to use; as I told her at the time of sentencing it was the saddest day in my life because of everything we'd poured into her, not only myself, but all the team. We had gone over and above, I think, with Ms. Flora, and had done all we could. I still gave her the benefit of the doubt and—and sentenced her under the guidelines even though she continued to violate and violate to the point where we had to violate her probation and bring her back.
>
> So I'm going to—I'm not going to resentence her. I think that the sentences that were imposed were—are valid sentences, and I think—I think the Court did give her consideration at the time of the original sentencing on the probation violation, and—and so we'll go ahead and affirm the sentences as—as imposed.

After questioning by defense counsel, the trial court reiterated:

-6-

I did in fact, you know, give her—like I said, I—that—the—as a matter of fact, even at the time of sentencing, and I realize you weren't contesting them, but the original guidelines scored by the department in the Count I were—was 87 to 290. We had some discussion and it was reduced to 84 to 280, so we actually reduced it even at the time of the original sentencing, . . . .

* * *

So we did go ahead and reduce them based on our discussion then, and I think, then, I even gave her the benefit of the doubt even after that on the probation violation to—to sentence her below that Count I charge.

So we'll go ahead and confirm the—affirm the sentences as imposed . . . .

On appeal, defendant repeatedly contends that her efforts in completing the SSP before her probation revocation should have resulted in a downward departure from the guidelines range. Defendant stresses her completion of SSP, which by all accounts is a difficult and intensive drug-rehabilitation program, in support of her argument that the trial court's sentence was unreasonable and disproportionate. However, defendant wholly fails to acknowledge that she already has received her requested relief—a downward departure from the guidelines range. And defendant does not argue that the already-imposed departure sentence was itself unreasonable or disproportionate. Regardless, showing that some other sentence might have also been reasonable given the record, simply does not affirmatively demonstrate that the sentence imposed was an abuse of discretion. See *Steanhouse*, 500 Mich at 460.

Defendant also argues that defense counsel was ineffective by failing to ask for a downward departure. Defendant did not raise this issue in her questions presented. Therefore, whether defense counsel was ineffective is not properly before us, and we could decline to address it on that ground alone. See MCR 7.212(C)(5); *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009). Regardless, we find it necessary to note that defense counsel was not ineffective in the manner that defendant now suggests because defense counsel did request a downward departure both at sentencing and at resentencing. And, as stated earlier, defendant has already received her downward departure, as her counsel requested. Therefore, defendant's claim of ineffective assistance is simply without merit. See *People v Mack*, 265 Mich App 122, 130; 695 NW2d 342 (2005).

IV. CONCLUSION

There were no errors warranting relief. Consequently, we affirm.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Michael J. Riordan

-7-