*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DALE RAYFIELD PAVLAT,

        Defendant-Appellant.

UNPUBLISHED
August 22, 2024

No. 362612
Chippewa Circuit Court
LC No. 2020-005232-FC

Before: O'BRIEN, P.J., and CAVANAGH and SHAPIRO*, JJ.

PER CURIAM.

Defendant appeals as on leave granted[1] the trial court's order denying his motion to withdraw his no-contest plea. Defendant pleaded no contest to kidnapping, MCL 750.349, and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (sexual contact with victim between the ages of 13 and 16 by actor five or more years older), and sought to withdraw his plea on grounds that the factual basis for the offenses was not established. We affirm defendant's conviction but remand for the administrative task of correcting defendant's judgment of sentence.

## I. BACKGROUND

In April 2020, the victim left her house during the night and walked to defendant's apartment complex. The victim was a 13-year-old, nonverbal child with Down syndrome and autism who sometimes used an iPad for basic communication. While the victim did not know defendant, she was familiar with his apartment complex and regularly went with her mother to visit a family friend who lived in the apartment below defendant's—the family friend lived in Unit 503, and defendant lived in Unit 603. The victim's mother testified that the victim did not know

---

[1] *People v Pavlat*, 512 Mich 962 (2023).

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

how to operate the buttons and doors outside or within the complex when they visited. When visiting their friend, the victim would knock on his door and wait for him to open it for her.

Security footage from the complex showed the victim arriving at the complex, waiting to be let into the building, and eventually making her way to defendant's apartment. While the victim waited by defendant's door, she removed her pants and "Pull-Up" but kept her shirt on. The footage showed defendant's door open at 4:28 a.m. and the victim, unclothed from the waist down, walk into the studio apartment. Defendant later left his apartment at approximately 8:40 a.m. to clean something off the floor in front of his apartment, walk the halls, and enter the sitting area in the foyer of his floor before returning to his apartment. Defendant exited his apartment again around 9:45 a.m., walked to the sitting area on his floor, then walked back to his apartment. Defendant contacted the police about finding the victim at approximately 10:30 a.m. Defendant informed police that at 6:30 a.m. or 7:30 a.m., he saw on the news and in an alert on his phone that the victim had been reported missing, but he could not explain his three- to four-hour delay in telling authorities that he had located her.

Officers searched the defendant's apartment and found the victim's Pull-Up in a tied-up bag in a trash can in the closet. Defendant initially denied ever seeing the Pull-Up or putting it in the trash, but he later conceded that he might have picked it up and placed it in a bag. He eventually said that he remembered placing a rag in a bag, tying up the bag, and putting it in the trash in the closet, but he emphasized that he thought it was a rag.

After defendant called the police, the victim was taken to the hospital. A DNA analysis of swabs from the victim's sexual-assault examination provided "very strong support" that defendant's DNA was on the victim's right breast, though it was unclear whether the DNA was from saliva, skin cells, semen, or contact with another surface. The victim, being nonverbal, was unable to communicate what happened during the six hours she was in defendant's apartment.

Defendant pleaded no contest to kidnapping and CSC-IV. In exchange, defendant was not sentenced as a third-offense habitual offender. Defendant filed a pro se emergency motion to withdraw his plea, alleging an insufficient factual basis for his kidnapping plea. The trial court denied the motion and sentenced defendant. Defendant then filed a second motion to withdraw his plea, again challenging the factual basis for his plea. The trial court held a hearing on the motion and later denied it. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion to withdraw a plea is reviewed for an abuse of discretion. *People v Brinkey*, 327 Mich App 94, 97; 932 NW2d 232 (2019). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. The proper interpretation of court rules is an issue of law reviewed de novo. *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016).

## III. ANALYSIS

Defendant argues that the trial court abused its discretion when it denied his motion to withdraw his no-contest plea. We disagree.

"No-contest pleas are essentially admissions of all the elements of the charged offense and are treated the same as guilty pleas for purposes of the case in which the no-contest plea is entered." *People v Cole*, 491 Mich 325, 332-333 n 6; 817 NW2d 497 (2012). Once the trial court accepts a plea, the defendant no longer has the absolute right to withdraw it. *Blanton*, 317 Mich App at 117. To withdraw a plea after sentencing, a defendant must establish a defect in the plea-taking process. *People v Brown*, 492 Mich 684, 693; 822 NW2d 208 (2012). See also MCR 6.310(C).

To be valid, a plea must be "understanding, voluntary, and accurate." *Brown*, 492 at 688-689, citing MCR 6.302(A). For a plea to be accurate, the trial court must establish a factual basis for the plea. MCR 6.302(D). See also *People v Pointer-Bey*, 321 Mich App 609, 616; 909 NW2d 523 (2017). "In the case of a plea of nolo contendere, the standard to be applied by an appellate court in its review of the adequacy of factual bases for a plea is whether the trier of fact could properly convict on the facts elicited from reliable sources." *People v Patmore*, 264 Mich App 139, 151 n 4; 693 NW2d 385 (2004). A trial court may rely on a preliminary examination transcript to establish the factual basis for a *nolo contendere* plea. *People v Chilton*, 394 Mich 34, 38-39; 228 NW2d 210 (1975).

In his statement of questions presented, defendant states that there was an insufficient factual basis for his CSC-IV plea, but he failed to address or brief this issue. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *Id*. (quotation marks and citation omitted). Because defendant has failed to brief his challenge regarding the factual basis of his CSC-IV plea, we consider this issue abandoned on appeal. See *id*.

Even if the issue was not abandoned, we would conclude that the record provides a sufficient factual basis from which a trier of fact could properly convict defendant of violating MCL 750.520e(1)(a). That statute proscribes sexual contact with a victim between the ages of 13 and 16 by an actor five or more years older. MCL 750.520e(1)(a). "Sexual contact" includes the intentional touching of a victim's "intimate parts" if the touching "can reasonably be construed as being for the purpose of sexual arousal or gratification." MCL 750.520a(q). "Intimate parts" includes the "breast of a human being." MCL 750.520a(f).

The victim was 13 years old and defendant was 62 years old at the time of the offense. Testimony—confirmed by video—at the preliminary examination supported that the victim took off her pants and Pull-Up before she entered defendant's apartment, but she was wearing a shirt when defendant opened the door and let her in. Defendant initially told a detective that the victim was fully clothed when she entered his apartment, but after being told that the police had seen a video showing that the victim entered his apartment naked from the waist down, defendant indicated that the victim was indeed naked from the waist down. The victim's mother testified that, during the victim's physical examination at the hospital, it was noted that the victim's boots were on the wrong feet and her socks were upside down, prompting a sexual assault examination. A DNA analysis of swabs taken during this examination provided "very strong support" for a finding that defendant's DNA was present on the victim's right breast. The victim was unable to provide an account of what happened in defendant's apartment, and defendant provided

inconsistent accounts. Defendant first told a detective that the victim slept on his couch, but later, after learning that the victim was undergoing a physical examination, he told the detective that she slept on his bed.

From this evidence, a trier of fact could reasonably conclude that defendant engaged in sexual contact with the victim by touching her breast for sexual gratification. See MCL 750.520e(1)(a); MCL 750.520a(f). Because a trier of fact could reasonably conclude on the basis of facts elicited from reliable sources that defendant committed the charged offense, the trial court did not abuse its discretion by denying defendant's motion to withdraw his plea. See *Brinkey*, 327 Mich App at 97; *Patmore*, 264 Mich App at 151 n 4.

Turning to defendant's main argument on appeal, he contends that the evidence provided at the preliminary examination did not create a sufficient factual basis that he knowingly restrained the victim, which is an essential element of kidnapping. The kidnapping statute that defendant was convicted under, MCL 750.349, provides in relevant part:

(1) A person commits the crime of kidnapping if he or she *knowingly restrains* another person with the intent to do 1 or more of the following:

\* \* \*

(c) Engage in criminal sexual penetration or criminal sexual contact prohibited under chapter LXXVI1 with that person.

\* \* \*

(2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts. [Emphasis added.]

The specific intent required to support a kidnapping conviction "can be established inferentially on the basis of [the defendant's] conduct during the [time] in question." *People v Jaffray*, 445 Mich 287, 303; 519 NW2d 108 (1994). "Direct and circumstantial evidence, including reasonable inferences arising from the use of circumstantial evidence, may provide sufficient proof to meet the elements of a crime." *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019).

The trial court did not abuse its discretion when it denied defendant's motion because there was a sufficient factual basis for a trier of fact to conclude that defendant knowingly restrained the victim. At the preliminary examination, the prosecution presented evidence supporting that the victim, who was nonverbal with special needs, escaped from her house in the early morning hours and went to defendant's apartment building trying to go to a family friend's apartment in Unit 503, but ended up in front of Unit 603—defendant's apartment. While waiting outside defendant's apartment, the victim removed her pants and Pull-Up. Defendant eventually opened his door and let the victim into his apartment at 4:28 a.m.; he said that he tried to talk to her but realized that she had special needs and was nonverbal when she entered his apartment. Evidence established

that defendant learned that the victim was a missing child at approximately 6:30 a.m. or 7:30 a.m., but he did not contact the police until 10:30 a.m. Defendant could not explain this three- or four-hour delay between his discovering that the victim was a missing child and alerting authorities to her location in his apartment.

Video footage showed that, during this delay, defendant left his apartment twice to walk the hallway between his apartment and the sitting area on the sixth floor. On his first trip, defendant can be seen bending down and doing something on the floor in front of his apartment, then going back into his apartment. The victim's Pull-Up was found in a tied-up bag in defendant's trash. Defendant initially denied picking up the Pull-Up, then admitted that he might have, and eventually said that he picked up a rag and placed it in a bag but emphasized that he thought it was a rag.

At no point during this time did defendant open his apartment door to let the victim leave, and both times he left the apartment, he left the victim inside knowing that she was a missing child. The evidence reflected that the victim did not know how to operate the doors in defendant's apartment complex and required defendant's assistance to enter his apartment, and the record is devoid of any evidence that the victim could have left the apartment without defendant's assistance. There was no evidence that defendant had legal authority over the victim, and evidence established that the victim did not have the capacity to consent to defendant's conduct.

On the basis of this evidence, a trier of fact could reasonably conclude that the victim mistakenly entered defendant's apartment believing that it belonged to a family friend; defendant quickly discovered that the victim was nonverbal and had special needs; defendant sexually assaulted the victim as evidenced by his DNA on her breast; after finding out that that the victim was a missing child, defendant left her in his apartment to check the hallway, apparently picking something off the floor; defendant lied to police about placing the victim's Pull-Up in a tied-up bag in a trash can in a closet; defendant inexplicably waited between three and four hours to report that he found the victim after he discovered she was reported missing; the victim did not have the ability to leave defendant's apartment without assistance; the victim could not consent to defendant restricting or confining her in his apartment; and defendant did not have the legal authority to restrict or confine the victim in his apartment. From these conclusions, a factfinder could reasonably infer that defendant knowingly restrained the victim by restricting her movements or confining her inside his apartment without consent or authority and with the intent to engage in criminal sexual contact. This constitutes kidnapping under MCL 750.349(1)(c). Because the record indicates that there was an adequate factual basis for defendant's kidnapping plea, we conclude that the trial court did not abuse its discretion by denying defendant's motion to withdraw his plea. See *Brinkey*, 327 Mich App at 97.

Briefly, defendant's judgment of sentence has a box checked indicating that his sentences for kidnapping and CSC IV are to be served consecutively. "In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). On the record, the trial court ordered that defendant's sentences run concurrent to one another—the court never mentioned consecutive sentencing. It thus appears that the trial court inadvertently checked the box ordering that defendant's sentences be served consecutively. We

accordingly remand for the administrative task of correcting defendant's judgment of sentence to reflect that his sentences are to be served concurrently.

Affirmed but remanded for the administrative task of correcting defendant's judgment of sentence. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro