*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 16, 2022

Plaintiff-Appellee,

v

No. 356336
Kalkaska Circuit Court
LC No. 20-004432-FH

JARED CASH BUTTERFIELD,

Defendant-Appellant.

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

PER CURIAM.

The prosecution charged Jared Cash Butterfield with assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and notified him that he was subject to a 25-year mandatory minimum sentence under MCL 769.12(1)(a) as a fourth-offense habitual offender. In exchange for dismissal of the habitual offender enhancement, Butterfield pleaded guilty to AWIGBH. At sentencing, Butterfield waived his right to counsel, and the trial court sentenced him to serve 27 to 120 months of imprisonment. He later moved to withdraw his plea, contending that the enhancement did not apply, and sought resentencing, arguing that his waiver of counsel was invalid.

The trial court agreed that Butterfield was never eligible for the 25-year mandatory minimum sentence, but otherwise denied the motion. We conclude that Butterfield's plea was not understandingly and voluntarily made, and that he did not validly waive his right to counsel at sentencing. We vacate the trial court's order denying Butterfield's motions to withdraw his guilty plea and for resentencing and remand for proceedings consistent with this opinion.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Butterfield allegedly assaulted his girlfriend by choking her until she was unconscious and was charged with AWIGBH. The charging documents averred that Butterfield was a fourth-offense habitual offender, subject to a 25-year mandatory minimum sentence under MCL 769.12(1)(a). At a plea hearing, Butterfield inquired about the details of the prosecution's plea offer. The prosecution confirmed that "if [Butterfield] is willing to plead today, he would plead

guilty as charged to count one [AWIGBH] and we would drop the habitual." Butterfield pleaded guilty, and the trial court accepted his plea.

At sentencing, Butterfield requested to represent himself after his retained counsel had withdrawn from the case. After a short colloquy, the trial court found that Butterfield knowingly and voluntarily waived his right to counsel. The court sentenced Butterfield to 27 to 120 months of imprisonment for the AWIGBH conviction.[1]

Approximately six months later, Butterfield moved to withdraw his plea or for resentencing. The motion alleged that Butterfield's guilty plea was illusory, coerced, and involuntary because he pleaded guilty to avoid a mandatory minimum sentence that did not apply to him. Alternatively, he claimed that he was denied the effective assistance of counsel during plea negotiations because his attorney told him that he would avoid the mandatory minimum sentence and instead receive a jail sentence. Butterfield also sought resentencing because the trial court did not comply with the proper procedures to allow self-representation at sentencing and misscored the sentencing guidelines. At a hearing on the motion, the prosecution conceded that the felony information erroneously included the 25-year mandatory minimum enhancement but claimed that Butterfield qualified for a different fourth-offense habitual offender enhancement, which subjected him to the possibility of life imprisonment. See MCL 769.12(1)(b). The trial court denied Butterfield's motion in all respects. This appeal followed by delayed leave granted.[2]

## II. MOTION TO WITHDRAW PLEA

Butterfield argues that the trial court erred by denying his motion to withdraw his guilty plea. We review a trial court's decision regarding a motion to withdraw a plea for an abuse of discretion. *People v Cole*, 491 Mich 325, 329; 817 NW2d 497 (2012). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014) (quotation marks and citation omitted). This case also involves the application of MCR 6.302, which governs guilty plea proceedings. "The proper interpretation and application of a court rule is a question of law that is reviewed de novo." *Cole*, 491 Mich at 330. De novo review means that "we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). Finally, to the extent that the trial court made any factual findings, our review is for clear error. *People v Pointer-Bey*, 321 Mich App 609, 621; 909 NW2d 523 (2017). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016).

---

[1] Butterfield's judgment of sentence inaccurately includes the fourth-offense habitual offender enhancement that had been dismissed by the prosecutor.

[2] *People v Butterfield*, unpublished order of the Court of Appeals, entered June 3, 2021 (Docket No. 356336).

## A. ILLUSORY PLEA

First, Butterfield argues that his guilty plea was illusory because he bargained for a benefit—dismissal of the 25-year mandatory minimum enhancement—that did not exist.

Although "[t]here is no absolute right to withdraw a guilty plea once the trial court has accepted it," a defendant may move for withdrawal of his plea "when there has been a defect in the plea-taking process." *People v Al-Shara*, 311 Mich App 560, 567; 876 NW2d 826 (2015) (quotation marks and citation omitted). Butterfield moved to withdraw his plea under MCR 6.310(C), which allows the trial court to set aside the plea if it determines that there was a defect in the plea proceeding. "A criminal defendant may be entitled to withdraw his or her guilty plea if the bargain on which the guilty plea was based was illusory, i.e., the defendant received no benefit from the agreement." *Pointer-Bey*, 321 Mich App at 621. Similarly, "an illusory plea bargain is one in which the defendant is led to believe that the plea bargain has one value when, in fact, it has another lesser value." *People v Stovall*, 334 Mich App 553, 562; 965 NW2d 264 (2020) (quotation marks and citation omitted).

Butterfield pleaded guilty in exchange for the dismissal of the fourth-offense habitual offender enhancement brought under MCL 769.12(1)(a). This provision mandates a 25-year minimum sentence for an individual who is convicted of a felony that is a "serious crime" and who has previously been convicted of at least three felonies, one or more of which are "listed prior felonies." The prosecution later conceded that this notice was erroneous, and the trial court agreed.[3] However, Butterfield was still a fourth-offense habitual offender under MCL 769.12(1)(b), which allows the court to sentence a defendant "to imprisonment for life or for a lesser term."[4] The trial court ultimately rejected Butterfield's argument that his plea was illusory, reasoning:

> And so, to the extent that it's illusory or it's different than what [Butterfield] thought he was being offered, the Court would deny it on those grounds, because, again, I think Mr. Butterfield was very clear as to what he was pleading to, what the maximum penalty was and what the potential implications were for him.

This Court confronted a nearly-identical set of circumstances in *Pointer-Bey*. There, in exchange for the defendant's guilty plea, the prosecutor agreed not to seek the 25-year mandatory

---

[3] Butterfield had not committed a "listed prior felony" as defined under MCL 769.12(6)(a), and therefore the penalty provision of MCL 769.12(1)(a) did not apply to him.

[4] MCL 769.12(1)(b)'s habitual offender provision applies when the defendant has been previously convicted of three or more felonies and commits a subsequent felony that is "punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life." MCL 769.12(1)(b). Butterfield's presentence investigation report indicates that at the time of the AWIGBH offense—a felony punishable by a maximum 10-year term of imprisonment, MCL 777.16d—he had previously been convicted of at least three felonies. Accordingly, the trial court and the parties correctly recognized that Butterfield was eligible for the penalties under MCL 769.12(1)(b).

minimum sentence for fourth-offense habitual offenders under MCL 769.12(1)(a) and to reduce the defendant's status to a third-offense habitual offender under MCL 769.11. *Pointer-Bey*, 321 Mich App at 621, 624. However, the defendant was not subject to the 25-year minimum sentence under MCL 769.12(1)(a) because his prior felonies did not satisfy the statute's requirements. *Id*. at 623. Rejecting the defendant's argument that his guilty plea was illusory, we explained:

> The prosecutor's offer to take the 25-year minimum term of imprisonment "off the table" in exchange for defendant's plea was based on a misunderstanding of the law. It provided defendant with no actual benefit because he was not subject to MCL 769.12(1)(a). Nevertheless, it is clear that defendant received considerable benefit for his plea, and we are not persuaded by his assertion that the bargain was illusory. *For instance, while MCL 769.12(1)(a) did not apply, defendant concedes that he was nevertheless a fourth-offense habitual offender subject to MCL 769.12(1)(b).* In exchange for his plea, the prosecutor agreed to reduce defendant's habitual offender status to third-offense habitual offender, MCL 769.11. Moreover, the prosecutor also agreed not to charge defendant in connection with a second bank robbery . . . . [*Id*. at 623-624 (emphasis added).]

Similarly, Butterfield received "considerable benefit for his plea," given the dismissal of the fourth-offense habitual offender enhancement—albeit the wrong one. Just like the defendant in *Pointer-Bey*, Butterfield was a fourth-offense habitual offender subject to MCL 769.12(1)(b). Rather than facing a potential maximum sentence of life imprisonment under this enhancement provision, Butterfield received the statutory maximum 10-year sentence for AWIGBH, MCL 777.16d. In other words, the dismissal of the habitual offender enhancement significantly limited the trial court's sentencing discretion and foreclosed a maximum sentence greater than 10 years of imprisonment. Because Butterfield obtained a considerable benefit for his plea, it was not illusory.

## B. UNDERSTANDING AND VOLUNTARY PLEA

Second, Butterfield contends that his plea was involuntary because he did not know the actual terms of the plea bargain to which he agreed. A guilty plea must be understanding, voluntary, and accurate. MCR 6.302(A). "A plea that is not voluntary and understanding 'violates the state and federal Due Process Clauses.' " *People v Blanton*, 317 Mich App 107, 119; 894 NW2d 613 (2016), quoting *People v Brown*, 492 Mich 684, 699; 822 NW2d 208 (2012), citing US Const Ams V and XIV, and Const 1963, art 1, § 17. The court must ensure that the defendant understands "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law." MCR 6.302(B)(2). Additionally, a voluntary plea is one in which the defendant is "fully aware of the direct consequences of the plea," and "[t]he most obvious direct consequence of a conviction is the penalty to be imposed." *Cole*, 491 Mich at 333-334 (quotation marks and citations omitted). "[H]abitual-offender enhancement is a direct consequence of pleading guilty" and therefore "a defendant must be fully aware of the consequences of that enhancement before pleading guilty." *Brown*, 492 Mich at 695 n 35. When "a plea is offered pursuant to a bargain with the prosecutor, voluntariness depends upon the defendant's knowledge of the actual value of the bargain." *Stovall*, 334 Mich App at 562 (quotation marks and citation omitted). The voluntariness inquiry also requires that the court "confirm the terms of the [plea] agreement with . . . the defendant." MCR 6.302(C)(2).

The trial court's findings about Butterfield's knowledge of the mistaken habitual offender status are somewhat unclear. But the court's conclusion that Butterfield was "completely clear on what the plea was that he was being offered in this case" was clearly erroneous. Although Butterfield understood that he was pleading guilty to AWIGBH in exchange for dismissal of the fourth-offense habitual offender enhancement, no evidence supports that Butterfield knew that the 25-year mandatory minimum penalty was specifically inapplicable to him. When Butterfield pleaded guilty, his charging documents that gave notice of the habitual offender enhancement under MCL 769.12(1)(a) had not been amended, and no statements of record reflected any knowledge of this error. The prosecutor confirmed at the plea hearing that the habitual offender enhancement would be dismissed—necessarily referring to the enhancement described in the charging documents. Butterfield also stated in an affidavit that he pleaded guilty to avoid the 25-year mandatory minimum sentence, and the presentence investigation report (PSIR) notes that Butterfield "stated that he took the plea because he could not take the risk of getting 25 years in prison." Accordingly, any factual finding that Butterfield understood the exact terms of his plea bargain was clearly erroneous.

Further, the ultimate decision to deny Butterfield's motion to withdraw his guilty plea was an abuse of discretion. MCR 6.302(B)(2) requires the court to find that the defendant understands "any mandatory minimum sentence required by law." The record indicates that Butterfield believed he was facing a 25-year mandatory minimum sentence and pleaded guilty in exchange for dismissal of that enhancement. Butterfield incorrectly thought that his previous criminal history subjected him to a "mandatory minimum sentence required by law." MCR 6.302(B)(2). The trial court even admitted that erroneous information regarding the 25-year mandatory minimum penalty "might have played into [Butterfield's] decision-making about whether or not to accept the plea that was being offered." Therefore, we conclude that Butterfield's plea was not understandingly made because he was "misinformed concerning the benefit of his plea." See *People v Graves*, 207 Mich App 217, 220; 523 NW2d 876 (1994). See also *Pointer-Bey*, 321 Mich App at 623 n 4 ("To the extent that defendant was misinformed that he faced a 25-year mandatory minimum sentence, the plea proceedings also failed to comply with MCR 6.302(B)(2)").[5]

Additionally, Butterfield's plea was not voluntary because he was not "fully aware of the direct consequences" of his plea. The prosecution provided inaccurate information in Butterfield's charging documents, reasonably leading him to believe that he faced a 25-year mandatory

---

[5] In the context of Butterfield's ineffective assistance of counsel claim, the trial court explained that even if Butterfield was misinformed regarding the applicability of the 25-year mandatory minimum penalty, this lack of understanding still would not warrant withdrawal of the guilty plea because Butterfield would have benefited from dismissal of the possibility-of-life sentence enhancement under MCL 769.12(1)(b). Although relevant to whether Butterfield was denied the effective assistance of counsel, whether or not Butterfield would have pleaded guilty had he possessed accurate information about the habitual offender enhancement is not relevant to the determination of whether his plea was understanding. Necessarily, an understanding plea relies upon the information that the defendant *actually understood* when entering that plea.

minimum sentence under MCL 769.12(1)(a).[6]  The prosecution's error affected the terms of Butterfield's plea agreement, and Butterfield was not informed of this error before entering his plea.  This misinformation led Butterfield to bargain for the dismissal of the habitual offender enhancement without being "fully aware of the consequences of that enhancement."  See *Brown*, 492 Mich at 695 n 35.  Therefore, the trial court erred by denying Butterfield's motion to withdraw the plea because his plea was involuntary under MCR 6.302(C)(2).

These defects in the plea proceedings entitle Butterfield to relief under MCR 6.310(C), which states in relevant part:

> (3) If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea.  If the defendant elects to allow the plea and sentence to stand, the additional advice given and inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals.

On remand, the trial court must give Butterfield the option "to allow the plea and sentence to stand or to withdraw the plea."  MCR 6.310(C)(3).  "If the plea is withdrawn, the trial court must vacate his conviction and sentence and the matter may proceed to trial."  *Brown*, 492 Mich at 699.[7]

Alternatively, Butterfield argues that he should be allowed to withdraw his plea because defense counsel was ineffective by providing misleading advice during plea negotiations.  Given that we have already granted relief allowing Butterfield to withdraw his plea, this issue is moot and need not be addressed.  See *People v Jones*, 317 Mich App 416, 431-432; 894 NW2d 723

---

[6] The possibility of a *discretionary maximum* life sentence under MCL 769.12(1)(b) is a vastly different consideration from the guarantee of a *mandatory minimum* 25-year sentence under MCL 769.12(1)(a).  Although a fourth-offense habitual offender under MCL 769.12(1)(b) faces the possibility of a maximum life sentence, the court's discretion with respect to the defendant's *minimum* sentence is limited by consideration of the sentencing guidelines range and the requirement of proportionality when departing from the guidelines.  See *People v Steanhouse*, 500 Mich 453, 470-473; 902 NW2d 327 (2017).  In this case, Butterfield's minimum guidelines range was 19 to 38 months, and the trial court determined 27 months of imprisonment to be a proportionate minimum sentence.  Therefore, although Butterfield would have faced the possibility of a maximum life sentence as a fourth-offense habitual offender under MCL 769.12(1)(b), his minimum sentence would have almost certainly been substantially less than the 25-year mandatory minimum authorized by MCL 769.12(1)(a).

[7] At sentencing, Butterfield indicated that he removed his retained attorney because the attorney had filed a motion to withdraw the plea without Butterfield's approval.  This purported motion is not in the lower court record, and Butterfield's statements about the motion do not impact our analysis about the defectiveness of his guilty plea.

(2016) (stating that the defendant's ineffective assistance of counsel claim was moot when there was no further remedy available).

## III. SENTENCING

Butterfield next argues that the trial court erred on multiple grounds by denying his motion for resentencing.[8]

## A. SELF-REPRESENTATION

First, Butterfield contends that the trial court failed to comply with the procedures for allowing Butterfield to waive his right to counsel at sentencing. Butterfield preserved this issue for our review by raising it in a motion for resentencing. This self-representation argument partially implicates the trial court's compliance with MCR 6.005(D). "The proper interpretation and application of a court rule is a question of law that is reviewed de novo." *Cole*, 491 Mich at 330. Likewise, we review de novo the entire record to determine whether a defendant has validly waived the right to counsel. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). The trial court's factual findings regarding a defendant's waiver are reviewed for clear error. *Id*.

The Sixth Amendment of the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees the right to counsel at all "critical stages" for a criminal defendant facing imprisonment. *Id*. at 641. Sentencing is one such critical stage where the defendant has a right to be represented by counsel. *People v Miles*, 454 Mich 90, 99; 559 NW2d 299 (1997). The right to self-representation is also guaranteed by the Sixth Amendment. *Faretta v California*, 422 US 806, 819; 95 S Ct 2525; 45 L Ed 2d 562 (1975). Because "the right of self-representation and the right to counsel are mutually exclusive," a defendant who chooses to exercise his right of self-representation must validly waive his right to counsel. *People v Russell*, 471 Mich 182, 188-189; 684 NW2d 745 (2004).

In *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976), our Supreme Court set forth three requirements that a trial court must follow before allowing a defendant to proceed without counsel. The court must find that "(1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *Russell*, 471 Mich at 190. A trial court must "indulge every reasonable presumption against waiver of the right to counsel." *Id*. at 193. The court must also "engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *People v Ahumada*, 222 Mich App 612, 616-617; 564 NW2d 188 (1997).

---

[8] Although MCR 6.310(C)(3) provides that Butterfield, on remand, may "allow the plea and sentence to stand," we address these arguments because they may entitle Butterfield to resentencing, even if he chooses to allow the guilty plea to stand.

Additionally, the trial court must comply with the dictates of MCR 6.005(D), which provides in relevant part:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

A trial court's adherence to these requirements is viewed under a "substantial compliance" standard. *People v Adkins (After Remand)*, 452 Mich 702, 726; 551 NW2d 108 (1996), overruled in part on other grounds by *Williams*, 470 Mich 634. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Id*. at 726-727. "[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Russell*, 471 Mich at 191-192.

At sentencing, the court engaged in a short colloquy with Butterfield after informing him of his right to counsel and to self-representation:

> *The Court*:  Did you want to hire new counsel?  Did you want to see if you qualify for a court-appointed or did you want to proceed representing yourself today?
>
> [*Butterfield*]:  I'd like to proceed, sir.
>
> *The Court*:  Okay.  Have you ever represented yourself in court before?
>
> [*Butterfield*]:  No, your Honor.  Honestly, there is gonna – there are gonna be some things that I don't know, but –
>
> *The Court*:  Right.
>
> [*Butterfield*]: – I don't want to push it back.
>
> *The Court*:  Okay.  Well, I just want to make sure you understand that, as you stated, there are gonna be issues regarding procedure and substance that you may not fully understand and that having a lawyer, they would be able to help explain those things to you and so your result today could be affected by the lack of representation and—so, do you understand that that's a risk going forward representing yourself?

[*Butterfield*]:  Yes, Your Honor.

*The Court*:  And do you still want to accept that risk knowing that that's a possibility?

[*Butterfield*]:  Is it appropriate – may I ask, if – if I did want a court-appointed lawyer, how long it – it would push this back?  It'd push it back at least a month, wouldn't it?

*The Court*:  Not necessarily, because the way we're conducting hearings now, due to the COVID crisis, we're having hearings every week, so I could possibly have it rescheduled as soon as next week or the week after.

[*Butterfield*]:  I would like to move forward, your Honor.  I feel like as long as – I mean – you're gonna hear my side of the story today, the Prosecutor's side, and the victim's side and you're gonna make your decision.  I don't think that having counsel is really gonna too much affect it.

*The Court*:  Okay.  All right.  Well, the Court finds that your waiver is knowing and voluntary and—of your right to counsel, so we'll proceed with the sentencing hearing this morning.

Butterfield argues that the trial court failed to comply with MCR 6.005(D) because it did not advise him of his maximum possible sentence, nor did it sufficiently warn him of the risks of self-representation at sentencing.  First, the trial court clearly did not advise Butterfield of "the maximum possible prison sentence" for his AWIGBH conviction.  MCR 6.005(D)(1).  Although Butterfield had been apprised of that information at his plea hearing, the court rule explicitly requires the court to advise the defendant of the maximum sentence before accepting an initial waiver of the right to counsel.  The obvious implication of that rule is that the court's instructions should be given at the proceeding where the defendant's initial waiver of the right to counsel is made.  Therefore, providing that information at a plea hearing more than one month earlier, and with defense counsel present, did not satisfy the trial court's duty under MCR 6.005(D).

Second, both *Anderson* and MCR 6.005(D) require the trial court to explain to the defendant the risks involved in self-representation.  Here, the trial court made a broad and cursory statement to Butterfield that he might not understand "issues regarding procedure and substance" without an attorney and that an attorney could help explain those issues.  The trial court did not advise Butterfield of the specific "dangers and disadvantages" of proceeding without counsel at sentencing.  Butterfield's admission that "there are gonna be some things that I don't know" should have led the court to elaborate on the risks associated with self-representation at sentencing, including the difficulty of presenting uncounseled legal challenges to the scoring of the sentencing guidelines.  As our Supreme Court has cautioned:

"Red flags" that indicate a defendant's uncertainty regarding any of the questions the court uses to facilitate the defendant's understanding of the waiver requirements must be addressed by the trial judge. The judge must be able to ease the defendant's uncertainty after a reasonable inquiry, or the judge should deny the defendant's request to proceed in propria persona. [*Adkins*, 452 Mich at 725 n 25.]

-9-

Overall, the trial court's instructions fell short of providing Butterfield with a "methodical assessment of the wisdom of self-representation" at sentencing. See *Ahumada*, 222 Mich App at 616.[9]

Reviewing the entire record, we conclude that the trial court failed to substantially comply with the requirements of *Anderson* and MCR 6.005(D). Although the trial court was not required to strictly comply with the waiver procedures by providing a word-for-word recitation of the court rule requirements, the court had a duty to address each of these concepts in some manner. See *Adkins*, 452 Mich at 725 ("A particular court's method of inquiring into and satisfying these concepts is decidedly up to it, as long as the concepts in these requirements are covered."). Because the trial court did not satisfy its obligations, and indulging every reasonable presumption against waiver, the court erred by granting Butterfield's request to waive counsel and proceed *in propria persona*. On remand, Butterfield is entitled to resentencing,[10] even if he chooses to allow his guilty plea to stand.

## B. GUIDELINES SCORING

Second, Butterfield contends that the trial court erroneously scored prior record variable (PRV) 1 and offense variable (OV) 9. Butterfield preserved these guidelines-scoring challenges by raising them in a motion for resentencing. See MCL 769.34(10). Under the sentencing guidelines, we review the trial court's factual findings for clear error, and those findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. The trial court may consider all record evidence, "including the contents of a PSIR," when assessing points under the sentencing guidelines. *People*

---

[9] We recognize that the cited cases applying *Anderson* and MCR 6.005(D) all involved a defendant's rights to counsel and self-representation at trial. And our Supreme Court has previously stated that an "effective waiver of *trial* counsel requires a more exacting waiver than that required to waive counsel at pretrial stages of the proceedings." *Russell*, 471 Mich at 193 n 27. However, we need not decide if, and to what extent, this reasoning applies to the waiver of counsel at sentencing because faithful application of *Anderson* and MCR 6.005(D) supports our conclusion in this case.

[10] Generally, the complete denial of counsel at a critical stage of a criminal proceeding is a structural error requiring automatic reversal. See *Russell*, 471 Mich at 194 n 29. Applying binding United States Supreme Court precedent, our Supreme Court has recently held that the deprivation of counsel at a preliminary examination is subject to harmless-error review. *People v Lewis*, 501 Mich 1, 12; 903 NW2d 816 (2017). However, the *Lewis* Court's holding was limited to the preliminary examination context and expressly distinguished caselaw applying a structural error remedy to the denial of counsel at sentencing. *Lewis*, 501 Mich at 8 n 4, citing *People v Arnold*, 477 Mich 852; 720 NW2d 740 (2006) (applying rule of automatic reversal to denial of counsel in sentencing case). Therefore, we believe that the deprivation of a defendant's right to counsel at sentencing remains a structural error requiring automatic reversal—which, in this context, compels resentencing.

*v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The court may also draw "reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014).

### 1. PRV 1

PRV 1 is "prior high severity felony convictions," and is assessed 25 points when "[t]he offender has 1 prior high severity felony conviction." MCL 777.51. Prior high severity felony convictions include "[a] crime listed in offense class M2, A, B, C, or D." MCL 777.51(2)(a).

Butterfield argues that the trial court erroneously assessed 25 points for PRV 1 because he did not have any previous high severity felonies. The trial court explained its scoring for PRV 1 by noting that Butterfield had previously been convicted of breaking and entering, MCL 750.110. According to Butterfield's PSIR, he was convicted of breaking and entering on July 7, 2014. Butterfield was an adult at the time of this offense. Breaking and entering is a Class D felony, MCL 777.16f, and a Class D felony is one of high severity, MCL 777.51(2)(a). Therefore, PRV 1 was properly assessed at 25 points.

### 2. OV 9

OV 9 accounts for the number of victims. MCL 777.39(1). Ten points are assessed for OV 9 if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). OV 9 is scored by reference only to the defendant's conduct during the sentencing offense. *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009).

Butterfield argues that the trial court erred by finding that OV 9 was properly scored at 10 points because there was no evidence that his conduct placed anyone other than the immediate assault victim in danger. However, "close proximity to a physically threatening situation may suffice" to count an individual as a victim for purposes of OV 9. *People v Rodriguez*, 327 Mich App 573, 582; 935 NW2d 51 (2019) (quotation marks and citation omitted). In rejecting Butterfield's scoring challenge to OV 9, the trial court found by a preponderance of the evidence that there were four other individuals present, and in close proximity, to the assault. The trial court's finding is sufficiently supported by the record evidence in the PSIR. In addition to Butterfield's assault on the victim, the victim indicated that Butterfield was fighting with another adult before the victim "put herself in between them to break them up." The victim also told police that her two children were crying and witnessed part of the assault. Drawing reasonable inferences from this evidence supports a finding that the children were in close proximity to the incident and that they were placed in danger of physical harm by being so near to a violent situation. Based on the evidence that Butterfield had an altercation with another adult and that two children were in close proximity to the assault on the primary victim, the trial court did not clearly err by finding that at least two individuals were "placed in danger of physical injury" by Butterfield's conduct. See MCL 777.39(1)(c). Accordingly, the trial court properly assessed 10 points for OV 9.

## IV. CONCLUSION

The trial court erred by denying Butterfield's motion to withdraw his guilty plea. Butterfield's plea was not understanding and voluntary because he was misinformed as to the benefit of his plea bargain and the potential sentence he faced as a fourth-offense habitual offender. Given these defects, the trial court must give Butterfield the option to withdraw his guilty plea under MCR 6.310(C)(3). The trial court also erred by finding that Butterfield validly waived his right to counsel at sentencing. Consequently, if Butterfield elects to have his guilty plea stand, he is entitled to resentencing.

We vacate the trial court's order denying Butterfield's motions to withdraw his guilty plea and for resentencing, and we remand to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Kristina Robinson Garrett